MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
john.battenfeld@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, California 90071-3132
Telephone: +1.213.612.2500
Facsimile: +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Shannon B. Nakabayashi, Bar No. 215469
shannon.nakabayashi@morganlewis.com
One Market, Spear Tower
San Francisco, California 94105
Telephone: +1.415.442.1000
Facsimile: +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Anne-Marie Estevez, *admitted pro hac vice*
annemarie.estevez@morganlewis.com
200 South Biscayne Boulevard, Suite 5300
Miami, Florida 33131
Telephone: +1.305.415.3000
Facsimile: +1.305.415.3001

Attorneys for Defendants
FASTAFF, LLC and U.S. NURSING
CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE DALCHAU and MICHAEL GOODWIN, individuals on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FASTAFF, LLC; U.S. NURSING CORPORATION; and DOES 1 to 10 inclusive,<br><br>Defendants. | Case No. 3:17-cv-01584-WHO<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A FLSA COLLECTIVE ACTION**<br><br>Date: January 10, 2018<br>Time: 2:00 p.m.<br>Courtroom: 4, 17th Floor |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND ......................................................................... 2

     A.   Fastaff Is A Temporary Staffing Company That Places Travel Nurses On Short-Term Assignments At Acute Care Hospitals Across The Country ............. 2

     B.   Fastaff Provides Nurses With Housing Solutions Based On The Cost Of Housing For The Location Of The Assignment ........................................ 3

     C.   Plaintiffs Were Both Fastaff Travel Nurses But Worked In Different Locations, Were Assigned To Different Recruiters, And Received Different Compensation Including Overtime Pay ................................... 4

     D.   Contrary To Plaintiffs' Theory Of A "Uniform Policy," Whether And To What Extent A Nurse's Housing Subsidy Is Ever Reduced Is An Individualized Inquiry Such That All Nurses Are Not Similarly Situated ........... 5

     E.   Even Under Plaintiffs' Theory, No Putative Collective Action Members Have A Claim After May 17, 2017, When Fastaff Changed Its Policy So That Adjustments To Housing Benefits Would Be Made Only On A Daily Basis ........................................................................................... 7

III. ARGUMENT ................................................................................................. 8

     A.   Conditional Certification Is Far From Automatic .................................. 8

          1.   The Court Should Apply A Heightened Certification Standard In This Case Because Considerable Discovery Has Occurred ...................... 8

          2.   Even The Lower Standard For Conditional Certification Requires Meaningful Record Evidence That Plaintiffs And The Nurses They Seek To Represent Are Similarly Situated ........................................ 10

     B.   The Court Should Deny Conditional Certification Because Plaintiffs Are Not Similarly Situated To Each Other Or To Other Travel Nurses ................ 10

          1.   The Two Named Plaintiffs Are Not Even Similarly Situated Because Dalchau Has No FLSA Claim .................................................... 10

          2.   Contrary To Plaintiffs' Argument, The Putative Collective Class Is Neither Similarly Situated Nor Uniformly "Victim" To Fastaff's Housing Subsidy Policy ................................................................ 12

     C.   If Any Notice Is Authorized By The Court, It Should Be Limited To The Time Before Fastaff Changed The Alleged Policy ............................... 14

     D.   If Any Notice Is Authorized By The Court, Plaintiffs' Proposed Notice Should Be Rejected For Multiple Reasons ............................................. 16

          1.   The Statute Of Limitations For Plaintiffs' FLSA Collective Action Should Be Limited To Two Years ................................................... 16

          2.   Plaintiffs' Proposed Notice Is Misleading, One-Sided, And Confusing ................................................................................... 17

          3.   Any Notice Period Should Be Limited To Sixty Days ...................... 19

          4.   Contact Information Should Be Provided To And Notice Should Be Sent By A Third Party Administrator, Not Plaintiffs Or Their Counsel ..................................................................................... 19

IV.  CONCLUSION ............................................................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEF.'S OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
   06-cv-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .......................................................20

*Adams v. Inter-Con Sec. Sys., Inc.*,
   242 F.R.D. 530 (N.D. Cal. 2007) ...............................................................................9, 17, 20

*Alvarez v. Farmers Ins. Exch.*,
   No. 3:14-cv-574-WHO, 2014 U.S. Dist. LEXIS 133138 (N.D. Cal. Sept. 19, 2014) ..............17

*Alvarez v. IBP, Inc.*,
   339 F.3d 894 (9th Cir. 2003).................................................................................................16

*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*,
   MDL Docket No. 1743, 2009 WL 248677 (D. Colo. Feb. 3, 2009) ........................................20

*Bados Madrid v. Peak Constr., Inc.*,
   No. 2:09-cv-311, 2009 WL 2983193 (D. Ariz. Sept. 17, 2009) ..............................................17

*Barrera v. U.S. Airways Grp., Inc.*,
   Case No. CV–2012–02278–PHX–BSB, 2013 WL 4654567 (D. Ariz. Aug. 30, 2013) ...........18

*Basco v. Wal-Mart Stores, Inc.*,
   No. CIV.A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004)....................................12, 13

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   772 F. Supp. 2d 1111 (N.D. Cal. 2011) .................................................................................15

*Benedict v. Hewlett-Packard Co.*,
   No. 13-CV-0119-LHK, 2014 WL 587135 (N.D. Cal. Feb. 13, 2014)......................................18

*Bennett v. Hayes Robertson Grp., Inc.*,
   880 F. Supp. 2d 1270 (S.D. Fla. 2012) ..................................................................................12

*Bower v. Cycle Gear, Inc.*,
   Case No. 14-cv-2712-HSG, 2015 U.S. Dist. LEXIS 62380 (N.D. Cal. May 11, 2015)...........15

*Camper v. Home Quality Mgmt., Inc.*,
   200 F.R.D. 516 (D. Md. 2000)..................................................................................................8

*Cardoza v. Bloomin' Brands Inc.*,
   No. 13-CV-1820-JAD-NJK, 2014 WL 5454178 (D. Nev. Oct. 24, 2014) ..............................20

*Colson v. Avnet, Inc.*,
   687 F. Supp. 2d 914 (D. Ariz. 2010).................................................................................8, 10

*Conde v. Open Door Mktg., LLC*,
No. 15-CV-04080-KAW, 2016 WL 1427641 (N.D. Cal. Apr. 12, 2016) ...............................16

*Daniels v. Aeropostale W., Inc.*,
No. C 12-05755 WHA, 2013 WL 1758891 (N.D. Cal. Apr. 24, 2013)..................................17

*Delgado v. Ortho-McNeil, Inc.*,
No. SACV 07-263 CJCMLGX, 2007 WL 2847238, at *4 (C.D. Cal. Aug. 7. 2007) .............19

*Epps v. Oak St. Mortg. LLC*,
No. 5:04-CV-46-OC-10GRJ, 2006 WL 1460273 (M.D. Fla. May 22, 2006) ........................13

*Espenscheid v. DirecStat USA, LLC*,
No. 09-CV-625-BBC, 2010 WL 2330309 (W.D. Wis. June 7, 2010)....................................19

*Espinoza v. Cty. of Fresno*,
290 F.R.D. 494 (E.D. Cal. 2013) ..........................................................................................12

*Fetrow-Fix v. Harrah's Entm't., Inc.*,
No. 10-560, 2011 WL 6938594 (D. Nev. Dec. 30, 2011)...................................................9, 10

*Godhigh v. Savers, LLC*,
No. 16-CV-02874-WHO, 2016 WL 7406659 (N.D. Cal. Dec. 22, 2016) ...............................16

*Hernandez v. Sephora USA, Inc.*,
No. 16-CV-05392-WHO, 2017 WL 6209308 (N.D. Cal. Dec. 8, 2017) .................................16

*Hesseltine v. Goodyear Tire & Rubber Co.*,
391 F. Supp. 2d 509 (E.D. Tex. 2005) ..............................................................................11, 12

*Hinojos v. Home Depot, Inc.*,
No. 06-108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006)........................................................13

*Hoffman-La Roche v. Sperling*,
493 U.S. 165 (1989) ...............................................................................................................8

*Houston Police Officers' Union v. City of Houston Dep't.*,
No. H-00-2184, 2001 WL 36103817 (S.D. Tex. Sept. 26, 2001) .............................................4

*Johnson v. D.M. Rothman Co.*,
861 F. Supp. 2d 326 (S.D.N.Y. 2012)....................................................................................11

*Johnson v. Q.E.D. Envtl. Sys.*,
No. 16-cv-01454-WHO, 2017 U.S. Dist. LEXIS 67746 (N.D. Cal. May 3, 2017) ...................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

Page(s)

*Labrie v. UPS Supply Chain Sols., Inc.*,
   No. C 08-3182 PJH, 2009 WL 723599 (N.D. Cal. Mar. 18, 2009) ...................................17, 19

*Lewis v. Wells Fargo & Co.*,
   669 F. Supp. 2d 1124 (N.D. Cal. 2009) .................................................................................20

*Luque v. AT&T Corp.*,
   No. C 09-05885 CRB, 2010 WL 4807088 (N.D. Cal. Nov. 19, 2010)...................................19

*Newman v. Advanced Tech. Innovation Corp.*,
   749 F.3d 33 (1st Cir. 2014) ............................................................................................14, 15

*Pfohl v. Farmers Ins. Grp.*,
   No. 03-3880, 2004 WL 554834 (C.D. Cal. Mar. 1, 2004) ......................................................8, 9

*Ribot v. Farmers Ins. Grp.*,
   No. CV 11-02404 DDP FMOX, 2013 WL 3778784, at *4 (C.D. Cal. July 17, 2013).............15

*Robinson v. Empire Equity Grp., Inc.*,
   No. 09-1603, 2009 WL 4018560 (D. Md. Nov. 18, 2009) ......................................................20

*Rodriguez v. SGLC, Inc.*,
   No. 2:08-cv-01971-MCH-KJM, 2009 WL 454613 (E.D. Cal. Feb. 5, 2009)..........................17

*Russell v. Wells Fargo & Co.*,
   No. 07-cv-3993, 2008 WL 4104212 (N.D. Cal. Sept. 3, 2008) ..............................................20

*Schiller v. Rite of Passage, Inc.*,
   Case No. 2:13-cv-0576-HR, 2014 WL 644565 (D. Ariz. Feb. 19, 2014)................................18

*Sharp v. CGG Land (U.S.) Inc.*,
   840 F.3d 1211 (10th Cir. 2016).................................................................................................6

*Till v. Saks Inc.*,
   No. C 11-00504 SBA, 2013 WL 5755671 (N.D. Cal. Sept. 30, 2013)...........................8, 9, 19

*Trinh v. JP Morgan Chase & Co.*,
   No. 07-CV-1666-W-WMC, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ..............................8

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...................................................................................9

*Walker v. Honghua Am., LLC*,
   870 F. Supp. 2d 462 (S.D. Tex. 2012) ...................................................................................15

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Los Angeles

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

*Willner v. Manpower, Inc.*,
No. C 11-2846 JST (MEJ), 2013 U.S. Dist. LEXIS 43821 (N.D. Cal. Mar. 27, 2013)............21

*Wilson v. Decibels of Or., Inc.*,
No. 1:16-CV-00855-CL, 2017 WL 3671360 (D. Or. July 12, 2017) ................................12, 13

*Young v. Hobbs Trucking Co., Inc.*,
No. 3:15-cv-991, 2016 WL 3079027 (M.D. Tenn. June 1, 2016) ...........................................20

**Statutes**

29 U.S.C. § 207(a)(1) ................................................................................................................10

29 U.S.C. § 207(e)(2) ..................................................................................................................4

29 U.S.C. § 255 ....................................................................................................................16, 17

29 U.S.C. § 256 ..........................................................................................................................16

Cal. Labor Code § 510 ...............................................................................................................10

**Other Authorities**

29 C.F.R. § 778.201(a) ..........................................................................................................11, 12

29 C.F.R. § 778.202(d) ..........................................................................................................11, 12

29 C.F.R. § 778.214(a) .................................................................................................................4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

## I. INTRODUCTION

Plaintiffs Stephanie Dalchau and Michael Goodwin's argument for conditional certification of their FLSA collective action class is entirely contingent on the assertion that they and thousands of other travel nurses employed by Defendant Fastaff, LLC ("Fastaff") across the country were "victims" of a "uniform policy" whereby Fastaff improperly excluded a housing subsidy or Fastaff-provided housing from their regular rate for purposes of calculating overtime pay. Plaintiffs' theory is that even though the subsidy was intended to reimburse travel nurses for housing expenses, and the provided housing simply gave them a place to stay during an assignment, the subsidy and housing should be treated as wages because, under limited circumstances, the subsidy could be reduced if a nurse did not meet her commitment to be available to work an agreed-upon minimum number of hours. Leaving aside the significant legal flaws with this theory—that Fastaff will highlight at the appropriate time—Plaintiffs are unable to show that either they or the putative collective class for whom they seek conditional certification are similarly situated or victims of the same uniform policy.

To start, it is indisputable that some putative collective action members—including Plaintiff Dalchau—have no viable FLSA claim because Fastaff already paid them more overtime premiums than they could claim under the FLSA even if Plaintiffs' theory carried the day. As a result, Dalchau and others have no FLSA claim at all and so are not similarly situated to, for example, Plaintiff Goodwin. This fact alone provides a basis to deny conditional certification.

In addition, Plaintiffs' Motion should be denied because Plaintiffs have not shown that putative collective members were uniformly "victims" of a common policy. Although Plaintiffs assert based on no evidence (not even their own experiences) that all Fastaff nurses nationwide had their housing *per diem* subsidies reduced when they did not meet their guaranteed hours, the factual record does not support this. First, subsidies were never reduced if a nurse did not work the guaranteed hours but was available to do so. Second, for some nurses, Fastaff did not reduce housing subsidies even when the nurse failed to be available for all guaranteed hours. This demonstrates that all travel nurses nationwide are not similarly situated, that individualized

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

inquiries will be needed to evaluate potential liability in this case, and that conditional certification is therefore not warranted.

Finally, even if the Court decides to grant Plaintiffs' Motion, it should follow the weight of authority and: (1) cutoff the collective action class as of May 17, 2017, the date on or about which Fastaff revised its housing policy so that reductions to nurses' housing subsidies would only be made (if at all) on the basis of an entire day not being worked; (2) reject Plaintiffs' overbroad and misleading proposed Notice; and (3) order that any contact information be provided only to a third-party administrator, not to Plaintiffs or their counsel.

## II.     FACTUAL BACKGROUND

### A.     Fastaff Is A Temporary Staffing Company That Places Travel Nurses On Short-Term Assignments At Acute Care Hospitals Across The Country.

Fastaff is an industry leader in nurse staffing. (Declaration of Kimberly Windsor ("Windsor Decl.") at ¶ 2).[1] Fastaff partners with healthcare facilities across the country who are short staffed and often in desperate need of nurses in critical areas like Neonatal Intensive Care. (Transcript of the Deposition of Michelle Savell ("Savell Dep."), attached as Exhibit D to the Declaration of Russell R. Bruch ("Bruch Decl."), at 39:8-10). Fastaff provides these facilities with nurses who deliver continuous, high-quality patient care for a period typically lasting between two and thirteen weeks. (Transcript of the Deposition of Kimberly Windsor ("Windsor Dep."), attached as Exhibit C to Bruch Decl. at 16:6-13; Savell Dep. at 10:17-20).

Through continually providing high-quality nurses to fill critical needs, Fastaff has garnered a reputation with healthcare facilities that, in turn, enables Fastaff to offer the nurses it hires premier assignments and one of the most generous pay packages in the industry; up to $3,528 per week in addition to other benefits such as medical, dental, vision and 401(k) options. (Windsor Decl. at ¶ 2). In addition to generous compensation and benefits, Fastaff also offers nurses who accept Fastaff assignments away from their homes the choice of two housing solutions: temporary housing paid for by Fastaff during the assignment or a subsidy calculated to

---

[1] Fastaff is a subsidiary of Defendant U.S. Nursing Corporation. *See* Corporate Disclosure Statement. Dkt. No. 15.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

reimburse the travel nurse for the expected housing expenses to be incurred while during an assignment.  (*Id*. at ¶ 4).

### B.   Fastaff Provides Nurses With Housing Solutions Based On The Cost Of Housing For The Location Of The Assignment.

Since January 2015, Fastaff has employed thousands of travel nurses who have worked at numerous client facilities across the country.  (*See* Windsor Decl. at ¶ 3).  The vast majority of the travel nurses Fastaff employs take assignments more than 50 miles away from their permanent residence.  (*Id.* at ¶ 4).  Because the travel nurses are working away from home, Fastaff normally provides its travel nurses with two housing options while on assignment.  (*Id.*). The first option is that Fastaff will select and pay for housing (usually a hotel where the nurse will stay during the assignment).  The second option is that Fastaff will provide the nurse a weekly subsidy in an amount that is calculated to reimburse the nurse for the expected cost of the housing a nurse finds for himself or herself.  (*See* Windsor Dep. at 27:4-9).  In rare circumstances, the facility at which a travel nurse is working on assignment will supply the travel nurse with housing.  (*See* Windsor Dep. at 27:10-12, 28:19-29:1).  If facility-provided housing is not available during the assignment, A nurse's recruiter will communicate the housing options to the nurse when an assignment is offered and it is up to the nurse to decide which of the options to accept.  (*See* Windsor Dep. at 28:4-10; 29:12-15, 30:21-25; Savell Dep. 17:8-16; 18:6-21). [2]

If a nurse selects the housing subsidy, the weekly amount is included in the nurse's weekly paycheck but is identified as a separate non-taxable reimbursement amount in the nurse's pay statement.  (*See* Windsor Dep. at 32:1-13).  In order to determine the amount of the housing subsidy, Fastaff's housing and travel department researches the cost of housing in the area of the assignment and the Sales Department calculates the amount of the weekly subsidy based on that information.  (*See* Windsor Dep. at 29:24-30:9, 33:1-14; Savell Dep. at 38:19-21).  Contrary to Plaintiffs' unsupported theory in this case, the subsidy is not provided to increase a nurse's

---

[2] Each travel nurse is assigned to one of approximately 30 recruiters who help match the nurse with a facility in need.  *See* Savell Dep. at 15:12-16; Windsor Decl. ¶ 3.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

3

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

wages. Rather, it is intended to cover seven days of housing expenses for the specific area in which a given nurse is working. (Windsor Dep. at 33:23-25; 41:24-42:5). Because the subsidy is designed to reimburse the amount of the housing expenses a nurse incurs while on assignment away from home, the amount of the subsidy is treated as an expense reimbursement and not as wages. (Windsor Dep. at 27:15-22; Windsor Decl. at ¶ 5). This is consistent with the applicable FLSA regulation: "[T]he Department of Labor has interpreted § 207(e)(2) of the FLSA to mean that expense payments or allowances made by an employer are not considered part of the regular rate 'if the amount reasonably approximates the expense incurred.' 29 C.F.R. § 778.214(a)." *Houston Police Officers' Union v. City of Houston Dep't.*, No. H-00-2184, 2001 WL 36103817, *16 (S.D. Tex. Sept. 26, 2001). And obviously if a nurse elects housing paid for by Fastaff, the nurse is not receiving any payment at all.

Travel nurses are informed of Fastaff's guidelines regarding the housing options through a Fastaff Assignment Agreement Letter ("AAL") that each nurse receives and signs prior to starting an assignment. (Savell Dep. at 20:16-21). Each AAL is customized to show which housing option a nurse chose, and if the chosen option is a subsidy, the weekly amount. Nurses receive a new AAL for each assignment. (Savell Dep. at 29:19-22). Fastaff's recruiters may also independently communicate the requirements for a travel nurse to receive the full housing subsidy. (Savell Dep. at 20:10-13).

**C.** **Plaintiffs Were Both Fastaff Travel Nurses But Worked In Different Locations, Were Assigned To Different Recruiters, And Received Different Compensation Including Overtime Pay.**

Plaintiff Dalchau worked for Fastaff from September 2015 to November 2015 on an assignment at Petaluma Valley Hospital in Petaluma, California. (Transcript of the Deposition of Stephanie Dalchau ("Dalchau Dep."), attached as Exhibit A to Bruch Decl., at 34:24-35:6). Her recruiter was Jennifer Brattain. (*Id*. at 34:9-12). During her assignment, Dalchau's base rate of pay was $45 per hour and she received both daily and weekly overtime premiums because she worked in California. (*Id*. at 63:19-64:1). At the time of her one Fastaff assignment, Dalchau was a resident of Texas. (*Id*. at 32:16-33:6). Separate from her wages, because Dalchau travelled to California for the assignment, she was offered and chose a housing subsidy from Fastaff that

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFS.' OPPOSITION TO PLS.' MOTION FOR CONDITIONAL CERTIFICATION OF A FLSA COLLECTIVE ACTION Case No. 3:17-cv-01584-WHO

was calculated based on housing prices in Petaluma to reimburse her for her expected housing expenses while on the assignment. (*Id*. at 38:12-18).

Plaintiff Goodwin worked for Fastaff from October 2016 to November 2016 on an assignment at Goshin Hospital in Goshin, Indiana. (Transcript of the Deposition of Michael Goodwin ("Goodwin Dep."), attached as Exhibit B to Bruch Decl., at 16:23-17:1). His recruiter was Taylor Bonga. (*Id*. at 30:10-12). During his assignment, Mr. Goodwin's base rate of pay was $50 per hour and he received weekly (over 40 hours) overtime premiums. (*Id*. at 35:8-13). At the time of his one assignment for Fastaff, Goodwin resided in Newburgh, Indiana which was about five hours from Goshin, Indiana. (*Id*. at 16:12-17:15). Separate from his wages for his assignment at Goshin Hospital, Goodwin was offered and chose a housing subsidy from Fastaff that was calculated based on housing prices in Goshin, Indiana to reimburse him for his expected housing expenses during the assignment. (*Id*. at 32:1-25, 33:16-25, 38:17-39:2).

Both Plaintiffs admitted that they do not have any knowledge of the terms and conditions regarding the company-provided housing (which they never chose) nor the housing subsidies other travel nurses received. (Dalchau Dep. at 48:18-23, 87:4-8; Goodwin Dep. at 9:18-10:2, 46:15-17). Furthermore, neither of them assert that they had their subsidy reduced for not being available to work all their agreed hours, and neither of them had their subsidy increased when they worked more hours. (Windsor Decl. at ¶ 7).

### D. Contrary To Plaintiffs' Theory Of A "Uniform Policy," Whether And To What Extent A Nurse's Housing Subsidy Is Ever Reduced Is An Individualized Inquiry Such That All Nurses Are Not Similarly Situated.

In the past, Fastaff's AALs stated that a nurse's housing benefit would be prorated if he or she did not work the guaranteed hours due to the nurse's availability: "In the event you are unable to satisfy the weekly guaranteed hours: [. . .] Due to any reason the employee makes themselves unavailable, prorated housing benefit shall be applied." (*See* Ex. 1 to Declaration of Stephanie Dalchau ("Dalchau AAL"), Dkt. No. 32-4). Significantly, the nurse could not increase the

amount of the subsidy by working more than the guaranteed hours. Consistent with that, Fastaff never increased a nurse's housing subsidy based on hours worked. (Windsor Decl. at ¶ 7).[3]

Based on the language of AALs—but not their own experiences—Plaintiffs assert that for *all* Fastaff travel nurses nationwide, the housing benefit "is based upon, and varies with, the number of weekly hours worked." (Pl. Mem. at 7). The evidence does not support Plaintiffs' assertion for at least two reasons, both of which illustrate that travel nurses nationwide are not similarly situated.

First, for many Fastaff travel nurses their housing subsidy never varied with the number of weekly hours they worked because they either worked or were available to work their guaranteed hours. Indeed, the declarations submitted by Dalchau and Goodwin and Plaintiffs' Motion do not contend that Fastaff ever reduced their weekly housing subsidies based on hours worked. (*See* Dkt. Nos. 32-3 & 32-5).

Second, even as to situations when a nurse did not work at least the guaranteed hours, the housing subsidy was not necessarily reduced. First, if Fastaff determined that the reason was due to a client not offering sufficient hours, the subsidy was never reduced. (Windsor Dep. at 59:14-20; Savell Dep. at 32:24-33:2). Second, even if a nurse was not available to work the guaranteed hours, each situation was reviewed, and Fastaff would determine whether or not to reduce a nurse's housing subsidy on a case-by-case basis, taking into consideration the nurse's circumstances and the reason he or she was unavailable. (Transcript of the Deposition of Allison Strong ("Strong Dep."), attached as Exhibit E to Bruch Decl. at 19:7-12, 22:8-16; Savell Dep. at 70:17-71:18; Windsor Dep. at 60:7-23, 61:1-3, 62:4-6, 68:23-69:8, 70:8-14). In particular, the individual recruiter assigned to a given travel nurse and someone in the payroll department would

---

[3] Although the merits question of whether Fastaff's housing subsidies must be included in the regular rate when calculating overtime for travel nurses is not addressed at this initial stage of the litigation, this fact is illustrative of the challenges Plaintiffs will face when that question is addressed. In *Sharp v. CGG Land (U.S.) Inc.*, 840 F.3d 1211 (10th Cir. 2016), the Tenth Circuit held that meal per diem payments were not part of the employee's regular rate of pay because "Employees do not receive higher per diem payments after working longer hours." *Id.* at 1215-16. The same is true here, which demonstrates that the housing allowance is not based on hours worked but rather is intended to cover a nurse's housing expenses, not to compensate him or her for hours worked.

discuss the circumstances behind a nurse not working his or her guaranteed hours and then decide whether to reduce the housing subsidy.  (Strong Dep. at 43:19-44:9; Windsor Dep. at 75:2-13).

Thus, despite the language Plaintiffs seize on in the AAL, in practice, some travel nurses received their full housing allowance regardless of whether they fell short of their guaranteed hours due to personal unavailability.  (Windsor Dep. at 61:25-62:12; Savell Dep. at 31:14-17).  For example, as one putative collective action class member attested, Fastaff *never* reduced his housing subsidy despite him not meeting his guaranteed hours on at least one occasion.  (Declaration of Johnathan Willemain ("Willemain Decl.") at ¶ 4).  Mr. Willemain is not similarly situated to Plaintiffs who also never had their subsidy reduced but for different reasons – they always met their hours.  Mr. Willemain and Plaintiffs are also not similarly situated to nurses who on one or more occasions were not available to work their guaranteed hours and did have their subsidies reduced after review by Fastaff.  (Savell Dep. at 31:4-17; 33:8-17).[4]

**E.**      **Even Under Plaintiffs' Theory, No Putative Collective Action Members Have A Claim After May 17, 2017, When Fastaff Changed Its Policy So That Adjustments To Housing Benefits Would Be Made Only On A Daily Basis.**

On or about May 17, 2017, Fastaff changed its policy so that reductions to a housing subsidy, if any, would be made solely on the basis of full days not worked.  (Windsor Dep. at 37:5-11, 67:5-21; Strong Dep. at 29:20-30:6).  Under the revised policy, if a nurse works any portion of a day, the nurse receives the full *per diem* housing subsidy.  (Strong Dep. at 30:2-9, 33:18-25; Windsor Dep. at 67:7-10).  Fastaff also revised its policy so that nurses who select company-provided housing will never have deductions made regardless of whether or why they do not work their guaranteed hours.  (Strong Dep. at 39:22-41:13).  Consistent with this change, Fastaff has not reduced any travel nurses' housing subsidy unless they miss an entire day of work due to unavailability and do not work their guaranteed hours for the week, and Fastaff has not deducted amounts for company-provided under any circumstances.  This is shown by evidence submitted with this Opposition.  (Windsor Decl. ¶¶ 8-10, and Exs. A & B thereto).

---

[4] Willemain and Plaintiffs are also not similarly situated to nurses who on one or more occasions were not available to work their guaranteed hours and did have their subsidies reduced after review by Fastaff.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

III.     **ARGUMENT**

A.     **Conditional Certification Is Far From Automatic.**

Contrary to Plaintiffs' suggestion, conditional certification is not automatic.  As the Supreme Court has explained, the touchstone for court-authorized notice is judicial efficiency. *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989) (defining the purpose of a collective action as providing the judicial system the benefit of "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful conduct]").  Thus, "[t]he relevant inquiry . . . is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion." *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000); *see also Till v. Saks Inc.*, No. C 11-00504 SBA, 2013 WL 5755671, at *8 (N.D. Cal. Sept. 30, 2013) ("[t]he decision as to whether to certify a collective action is within the discretion of the district court."); *Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666-W-WMC, 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) (denying certification because a collective action would not advance the goal of "judicial economy").  Here, it would not be an efficient use of the Court's and the parties' resources to send notice to thousands of travel nurses and proceed with months of discovery and motion practice, if at this stage following significant discovery the Court can determine that all these many travel nurses were not in fact "the victims of a single decision, policy, or plan." *Johnson v. Q.E.D. Envtl. Sys.*, No. 16-cv-01454-WHO, 2017 U.S. Dist. LEXIS 67746, at *18 (N.D. Cal. May 3, 2017).

1.     **The Court Should Apply A Heightened Certification Standard In This Case Because Considerable Discovery Has Occurred.**

Courts apply a more rigorous analysis of conditional certification when substantial discovery has occurred. *See Pfohl v. Farmers Ins. Grp.*, No. 03-3880, 2004 WL 554834, at *2 (C.D. Cal. Mar. 1, 2004); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925-26 (D. Ariz. 2010). Although Plaintiffs correctly note that courts sometimes adopt a "two-stage" approach to certification of an FLSA collective action (Pls. Mem. at 6-7), the primary rationale for using this approach—and applying a lower standard at the first stage—is the lack of discovery at the first stage. *See, e.g.*, *Pfohl*, 2004 WL 554834, at *2.  By contrast, a stricter standard for conditional

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1  certification applies where more information is available in the record such that "a factual

2  determination is possible." *See Till*, 2013 WL 5755671, at *9 ("the Court may commence the

3  FLSA certification analysis at the second stage to the extent that the parties have had the

4  opportunity to engage in substantial discovery"); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.

5  Supp. 2d 1114, 1123-24 (E.D. Cal. 2009). Specifically, where substantial discovery has occurred,

6  courts may weigh factors such as: (1) the disparate factual and employment settings of class

7  members; (2) the individualized nature of applicable defenses; and (3) fairness and procedural

8  considerations. *See Pfohl*, 2004 WL 554834, at *2.

9  Here, the parties have sufficiently developed the record through discovery to warrant a

10  stricter standard for conditional certification. Both sides have exchanged written interrogatories

11  and requests for production of documents, resulting in the production of a large number of

12  documents. (*See* Declaration of Russell Bruch ("Bruch Decl.") at ¶ 8). In addition, Fastaff

13  deposed both named Plaintiffs, and Plaintiffs deposed Kimberly Windsor, Fastaff's Vice

14  President of Administration, Michelle Savell, Fastaff's Vice President of Recruitment, and

15  Allison Strong, Fastaff's Payroll Manager. (*Id.* at ¶ 9).

16  Thus, contrary to Plaintiffs' argument, the Court should not limit its analysis to whether

17  Plaintiffs have provided "little more than substantial allegations that putative [collective] action

18  members were together the victims of a single decision, policy, or plan." (Pls. Mem. at 7).

19  Instead, because the parties have conducted significant discovery, the Court should more

20  rigorously assess whether Plaintiffs have met their burden. *See Pfohl*, 2004 WL 554834, at *3

21  (applying stricter analysis at conditional certification stage because "the parties do not dispute

22  that discovery had been undertaken relating to the issues of certification"); *Fetrow-Fix v.*

23  *Harrah's Entm't., Inc.*, No. 10-560, 2011 WL 6938594, at *8 (D. Nev. Dec. 30, 2011) (evaluating

24  all discovery in the record where substantial discovery had occurred); *Adams v. Inter-Con Sec.*

25  *Sys., Inc.*, 242 F.R.D. 530, 537, n.6 (N.D. Cal. 2007); (noting that courts have relied on factors

26  normally analyzed at the second stage where factual development is extensive).

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

9

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

### 2. Even The Lower Standard For Conditional Certification Requires Meaningful Record Evidence That Plaintiffs And The Nurses They Seek To Represent Are Similarly Situated.

Even if the Court were to apply the first-stage, lower standard for analyzing conditional certification, Plaintiffs still fail to meet their burden. Plaintiffs emphasize that the standard presents a "very light burden" (Pls.' Mem. at 7), but it is not nearly as light as they suggest. Plaintiffs must provide evidentiary support to show that they and the putative collective action class members are "similarly situated" with respect to the claims at issue. *Colson*, 687 F. Supp. 2d. 928. The Court should examine whether the quantity and quality of evidence establishes "a reasonable basis for [a] claim of classwide FLSA violations." *Colson*, 687 F. Supp. at 927-28, 928 (emphasis added).

### B. The Court Should Deny Conditional Certification Because Plaintiffs Are Not Similarly Situated To Each Other Or To Other Travel Nurses.

Although Plaintiffs rest their entire Motion on the repeated allegation that *all* travel nurses nationwide were the "victims" of Fastaff's "uniform" housing *per diem* policy, the record evidence already developed establishes that this allegation is unsupported. *See Fetrow-Fix*, 2011 WL 6938594, at *7 ("unsupported assertions of widespread violations are not sufficient to meet [p]laintiff's burden" to obtain conditional certification). Contrary to Plaintiffs' assertions, the record demonstrates that the two named Plaintiffs are not even similarly situated to each other, let alone to the proposed nationwide collective group.

### 1. The Two Named Plaintiffs Are Not Even Similarly Situated Because Dalchau Has No FLSA Claim.

To start, the evidence establishes that the two named Plaintiffs are not similarly situated to one another because Plaintiff Dalchau does not have an FLSA claim and was not a "victim" of any alleged FLSA violation. Under California law, employees are entitled to daily overtime pay beyond the weekly overtime requirements of the FLSA, including time-and-a-half overtime for hours worked over eight in a day and double-time overtime pay for hours worked over twelve in a day. *See* Cal. Labor Code § 510; Industrial Welfare Commission, Wage Order No. 5-2001(3). By contrast, overtime pay is due under the FLSA only for hours worked over forty in a week. 29

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

U.S.C. § 207(a)(1). Significantly, daily overtime premiums paid under California law that are not required under the FLSA can be credited toward overtime pay owed under the FLSA. *See* 29 C.F.R. §§ 778.201(a); 778.202(d). Thus, if an employee has received overtime pay in excess of what is allegedly due under the FLSA, he or she lacks a cognizable claim under the FLSA.

In this case, Dalchau's own pay records mathematically establish that Fastaff paid her more in overtime than she is claiming under the FLSA because there were numerous weeks where she was paid overtime premiums required under California law (but not under the FLSA) for working more than eight or twelve hours in a day. As such, even under Plaintiffs' disputed theory of the case (i.e., that tax-free housing subsidies should be included in the regular rate when calculating overtime under the FLSA), Fastaff paid Dalchau more in overtime than she would be owed under the FLSA due to paying her additional premium pay under California law.[5] *See* Dalchau's Pay Records, attached as Ex. F to Bruch Decl.[6] Accordingly, she lacks a viable FLSA claim. *See*, *e.g.*, *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 334-35 (S.D.N.Y. 2012) (dismissing plaintiffs' FLSA overtime claims where defendant "actually made substantial overpayments" for premium pay, and such payments "offset" the plaintiffs' claimed FLSA overtime pay); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 522 (E.D. Tex. 2005) ("If an employer voluntarily pays an employee a premium rate contingent upon his

---

[5] Dalchau's pay statements permit a mathematical comparison of the overtime premiums that Fastaff paid her to the overtime she is claiming she is owed under the FLSA. Taking the week of September 20-26, 2015 as an example, Dalchau worked 48.75 hours and her housing subsidy was $450.24. Under her theory that the housing subsidy should be included in calculating her overtime pay, she is claiming that her regular rate of pay should have been $54.24 (($450.24 / 48.75 = $9.24) + 45) and that the total overtime premiums due to her under the FLSA (including what was paid and the additional claimed pay) should therefore be $237.30 ($54.24 x 0.5 x 8.75 hours). For the week of September 20-26, 2015, Plaintiff's pay statement shows she was paid California overtime premiums of $393.75 ((16 hours x $22.50) + (0.75 hours x $45) = $393.75). She was also paid more in overtime than she could claim under the FLSA in all the other weeks she worked over 40 hours.

[6] This analysis does not even take into account that if the stipend had been treated as taxable wages instead of non-taxable expense reimbursement, Dalchau (and others) would have received a lower net stipend amount that may have caused a loss that would be greater than any overtime increase.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

working more than eight hours in one day, then such payment may be . . . credited toward unpaid overtime.").[7]

This is likely also true for many other travel nurses who worked in California and other states with stricter premium pay requirements than the FLSA. All travel nurses cannot be similarly situated—nor can they all be victims of a single policy—where some of them, like Dalchau, have no FLSA claim because they cannot be owed any overtime under the FLSA. *See*, *e.g.*, *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1285 (S.D. Fla. 2012) (partially denying conditional certification where certain putative FLSA class members had been paid all wages allegedly due under the Act); *Espinoza v. Cty. of Fresno*, 290 F.R.D. 494 (E.D. Cal. 2013) (decertifying FLSA collective action class where some class members had no viable claim due to lack of damages). For this reason alone, Plaintiffs' Motion should be denied.

**2.**     **Contrary To Plaintiffs' Argument, The Putative Collective Class Is Neither Similarly Situated Nor Uniformly "Victim" To Fastaff's Housing Subsidy Policy.**

Plaintiffs' Motion should also be denied because putative collective members were not together the victims of a single policy of reducing travel nurses' housing allowances when they failed to meet their guaranteed hours.

First, the relevant inquiry when analyzing a proposed FLSA collective action claim is not merely whether there is an alleged unlawful policy but whether the policy is uniformly applied such that all employees are similarly situated. *See*, *e.g.*, *Basco v. Wal-Mart Stores, Inc.*, No. CIV.A. 00-3184, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004) (finding alleged corporate policy of keeping wages low insufficient to justify conditional certification when "the 'policy' was not even uniformly or systematically implemented at any given store"). Accordingly, even where a plaintiff points to an allegedly unlawful policy, conditional certification is inappropriate if a company did not uniformly apply the policy to all putative collective members. *Id.*; *Wilson v. Decibels of Or., Inc.*, No. 1:16-CV-00855-CL, 2017 WL 3671360, at * 1, 5 (D. Or. July 12,

---

[7] The FLSA allows employers to credit overtime premiums paid for hours in excess of eight per day whether that premium pay is voluntary, as in *Hesseltine*, or mandated by state law, as with Dalchau. *See* 29 C.F.R. §§ 778.201(a); 778.202(a), (b), & (d).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

1    2017), *report and recommendation adopted by* 2017 WL 3850273 (D. Or. Aug. 31, 2017)

2    (denying motion for conditional certification where plaintiff alleged that "defendant followed a

3    'common policy or plan' to undercount the hours the technicians worked," but "determining

4    whether each installation technician was properly paid would require an individualized inquiry.")

5    (internal quotation marks and citation omitted); *accord Epps v. Oak St. Mortg. LLC*, No. 5:04-

6    CV-46-OC-10GRJ, 2006 WL 1460273, at *7 (M.D. Fla. May 22, 2006) ("Plaintiffs contend that

7    the non-exempt loan officers are similarly situated because there was a corporate policy of

8    discouraging overtime.  However, even assuming that Oak Street had a corporate policy of

9    discouraging overtime, each Plaintiff and opt-in Plaintiff's proof of a violation will be

10   individualized because it depends upon how or whether each individual manager implemented the

11   policy with regard to each individual plaintiff.").

12       Here, as in the above cases, Plaintiffs have presented no evidence that application of the

13   policy was uniform.  Even as to the named Plaintiffs, their declarations do not claim that their

14   weekly housing subsidy was ever decreased (or increased) based on the hours they worked.  And

15   the evidence presented by Fastaff shows that notwithstanding the language of the AAL, a

16   reduction would not necessarily happen based on how the policy was applied to a particular nurse

17   by a particular recruiter and/or payroll employee.  Thus, unlike in the cases cited in Plaintiffs'

18   Motion, the determination of whether any given nurse actually had their subsidy "tied" to the

19   hours they worked would require individualized proof, which is inconsistent with collective

20   action treatment.  For this additional reason, the Court should deny Plaintiffs' Motion.  *See*, *e.g.*,

21   *Wilson*, 2017 WL 3671360, at * 1, 5; *Basco*, 2004 WL 1497709, at *7; *Hinojos v. Home Depot,*

22   *Inc.*, No. 06-108, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006) ("[T]he need for separate mini-

23   trials to resolve each individual's claim . . . is the antithesis of collective action treatment and

24   would overwhelm the judicial system and eliminate any judicial efficiency that might be gained

25   through a collective approach.").

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

**C.**     **If Any Notice Is Authorized By The Court, It Should Be Limited To The Time Before Fastaff Changed The Alleged Policy.**

If the Court conditionally certifies a collective action—which it should not—the collective period should end in May 2017 when Fastaff changed the alleged policy that Plaintiffs claim was unlawful. Individuals who are employed *after* an allegedly unlawful policy is changed are not similarly situated to individuals employed *prior* to the change because they were not together subject to "a single decision, policy, or plan." That is particularly the case here when the changes made on or about May 17, 2017, addressed the issues that Plaintiffs claim (and Fastaff disputes) caused the former policy to create overtime liability under the FLSA.

Plaintiffs' legal theory that tax-free housing allowances should be included in the regular rate when calculating travel nurses' overtime under the FLSA—with which Fastaff disagrees—relies on a handful of cases, in particular *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33 (1st Cir. 2014). (*See* Pls.' Mem. at 7-8). In *Newman*, the First Circuit clearly stated that it is permissible to calculate and pay per diem payments on the basis of entire days worked. 749 F.3d at 38 (method of calculating per diem "must use a day as its measuring unit, and not an hour.")[8] Therefore, even under the case on which Plaintiffs primarily rely, determining (and adjusting) per diem payments based on days worked (or not worked) does not render per diem payments wages that must be included in the regular rate.

Fastaff's changed policy satisfies the interpretation (which Fastaff contends is erroneous) of the FLSA by the *Newman* court. In particular, Fastaff changed its housing policy on or about May 17, 2017 so that any reduction to a travel nurse's housing subsidy would always be based on entire days worked or not worked and that deductions would never be made from the pay of travel nurses who elect company-provided housing. (*See* Windsor Dep. at 67:5-12; Strong Dep. at 29:20-30:6, 33:18-25; Windsor Decl. at ¶ 8). Evidence submitted with this Opposition demonstrates that, consistent with this change, Fastaff has not reduced travel nurses' subsidies

---

[8] The *Newman* court relied on Section 32d05a(c) of the Department of Labor Wage & Hour Division's Field Operations Handbook, which the First Circuit admittedly found to contain "some tension." *Newman*, 749 F.3d at 37-38.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

unless they miss an entire day of work due to unavailability and reductions are not made on an hourly basis. (*See* Windsor Decl. ¶¶ 9-10 and Exs. A & B thereto).

Significantly, Plaintiffs make no argument to even suggest that Fastaff's revised policy, as accurately described by Ms. Windsor in her deposition before Plaintiffs filed this motion, is unlawful.[9] Under similar circumstances, courts routinely cutoff collective action periods as of the date an employer changed the allegedly unlawful policy relied on by a plaintiff to conditionally certify a collective action. *See, e.g.*, *Ribot v. Farmers Ins. Grp.*, No. CV 11-02404 DDP FMOX, 2013 WL 3778784, at *4 (C.D. Cal. July 17, 2013) (ruling that class and collective period was appropriately "limited to the period prior to the change in policy"); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 472-73 (S.D. Tex. 2012) ("the policy change demonstrates that those employed by Defendant [after the policy change] are not 'similarly situated' to those employed before that time, as they are not together 'victims of a single decision, policy, or plan,' regardless of whether FLSA violations continued to occur after that time"); *accord Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1125 (N.D. Cal. 2011) (denying motion for class certification and decertifying collective action because class members who worked after November 2003 were not similarly situated to class members who worked before November 2003 where "24 Hour changed these [allegedly unlawful] policies in November of 2003").

Against this body of authority, Plaintiffs rely on a single distinguishable case, *Bower v. Cycle Gear, Inc.*, Case No. 14-cv-2712-HSG, 2015 U.S. Dist. LEXIS 62380 (N.D. Cal. May 11, 2015), to argue that the Court should include employees who began their employment with Fastaff after Fastaff changed the policy at issue. *Bower* stated without any analysis that whether the policy at issue there was changed was "a disputed issue" to be resolved *after discovery* where the claimed change was supported by a single declaration. Here, there has been discovery, and

---

[9] Plaintiffs wrongly imply that there is some uncertainty whether Fastaff actually changed its policy. (*See* Pls.' Mem. at 5-6). As Plaintiffs admit, Kim Windsor, Fastaff's Vice President of Administration, clearly described the policy change during her deposition. *See id.* Moreover, Plaintiffs' Motion also admits that Fastaff agreed to produce documents supporting Windsor's testimony and informed Plaintiffs those documents were forthcoming. *See id.* Rather than waiting a few days to receive those documents, Plaintiffs rushed to file the Motion.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

the fact that the policy changed is supported by the deposition testimony of multiple witnesses, a declaration, and pay records. *See supra* at 7.

In sum, any collective action period that the Court may certify (and it should not certify any) cannot include employees who began their employment with Fastaff after May 17, 2017 because they did not suffer the same injury caused by the same policy alleged under Plaintiffs' legal theory.

### D.     If Any Notice Is Authorized By The Court, Plaintiffs' Proposed Notice Should Be Rejected For Multiple Reasons.

If the Court decides to grant conditional certification and order that notice be sent to other travel nurses—which Fastaff maintains is not warranted—the Court should reject Plaintiffs' overbroad and misleading proposed notice. Instead, the Court should follow the common procedure of directing the parties to: (1) meet and confer to devise an even-handed and fair notice and notice process; and (2) submit any specific disputes to the Court. *See, e.g., Hernandez v. Sephora USA, Inc.*, No. 16-CV-05392-WHO, 2017 WL 6209308, at *6 (N.D. Cal. Dec. 8, 2017) (Orrick, J.) (ordering parties to "meet and confer concerning the form of and timing for the opt-in notice" prior to submitting separate proposals); *Godhigh v. Savers, LLC*, No. 16-CV-02874-WHO, 2016 WL 7406659, at *5 (N.D. Cal. Dec. 22, 2016) (Orrick, J.) (same); *Conde v. Open Door Mktg., LLC*, No. 15-CV-04080-KAW, 2016 WL 1427641, at *10 (N.D. Cal. Apr. 12, 2016) ("Defendants' suggestion that the parties be required 'to meet and confer concerning the method and content of the notice to address the defects in Plaintiffs' proposal,' is well-taken."). If the Court wishes to consider notice issues at this time, Fastaff's primary concerns are set forth below.

### 1.     The Statute Of Limitations For Plaintiffs' FLSA Collective Action Should Be Limited To Two Years.

Plaintiffs' proposed Notice is temporally overbroad because the FLSA's limitation period is two years. 29 U.S.C. § 255(a). A three-year limitation period can apply only in the case of a "willful" violation. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003). Any notice distributed to putative collective action members should be limited to the two-year limitations period proscribed by the FLSA, absent a showing by Plaintiffs of a "willful violation" by Defendant. Despite bearing this burden, Plaintiffs have not provided any factual information that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

could even preliminarily support an alleged willful violation. Significantly, none of the few cases they rely on to support their violation theory were decided by the Ninth Circuit, or by any court within the Ninth Circuit. Accordingly, the limitations period should be two years from the date that any Notice is issued. 29 U.S.C. §§ 255, 256.

### 2. Plaintiffs' Proposed Notice Is Misleading, One-Sided, And Confusing.

There are a number of deficiencies in Plaintiffs' proposed Notice that warrant revisions. Although Plaintiffs assert that they modeled the Notice on one approved by the Court in *Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-574-WHO, 2014 U.S. Dist. LEXIS 133138 (N.D. Cal. Sept. 19, 2014 at Dkt. No. 54), several deficiencies are presented.

First, the proposed Notice does not adequately inform potential collective action members of the Court's impartiality and thus risks creating the impression that the litigation itself is Court endorsed. A statement that the Court has not ruled on the merits of the lawsuit should appear prominently at the beginning of the Notice in bold font. *See Adams*, 242 F.R.D. at 540; *Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2013 WL 1758891, at *4 (N.D. Cal. Apr. 24, 2013); *Rodriguez v. SGLC, Inc.*, No. 2:08-cv-01971-MCH-KJM, 2009 WL 454613, at *2 (E.D. Cal. Feb. 5, 2009).

Second, the proposed Notice is one-sided in describing the claims and defenses and should have a more fulsome statement of Defendants' position in the litigation (i.e., consisting of more than a single sentence that Defendants deny the allegations). *Labrie v. UPS Supply Chain Sols., Inc.*, No. C 08-3182 PJH, 2009 WL 723599, at *8 (N.D. Cal. Mar. 18, 2009). Similarly, the Notice unfairly contains no information regarding Defendants' counsel, in the event that an employee desired to communicate with Defendants' counsel to obtain additional information. *See, e.g.*, *Bados Madrid v. Peak Constr., Inc.*, No. 2:09-cv-311, 2009 WL 2983193, at *3 (D. Ariz. Sept. 17, 2009) (ordering notice to include contact information for both parties' counsel to avoid suggestion that potential collective action members were already represented by plaintiff's counsel and to avoid granting plaintiffs' counsel exclusive access to potential collective action members).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

Third, the proposed Notice should advise potential collective action members that Plaintiffs are seeking to have housing amounts previously paid or provided to travel nurses treated as wages, not expense reimbursements, and that this result could have tax consequences. Advising putative collective action members of this potential consequence inherent in Plaintiffs' theory of liability is necessary for such individuals to make a fully informed choice concerning whether to join any collective action this Court may conditionally certify.

Fourth, unequivocal language in the proposed Notice stating that "[i]f Defendants are the prevailing party, you will not be responsible for paying any portion of Defendants' attorneys fees" must be removed as this misstates the law and misleads potential collective action members about their potential obligations in this action. In its place, any notice should inform potential collective action members of the possibility of having to pay Defendants' attorneys' fees if they opt-in and Plaintiffs do not prevail in this action. *See, e.g.*, *Schiller v. Rite of Passage, Inc.*, Case No. 2:13-cv-0576-HR, 2014 WL 644565, at *5 (D. Ariz. Feb. 19, 2014) ("Although prevailing FLSA defendants may only be awarded attorney fees in certain situations, the court agrees with defendant that potential class members should be made aware of the possibility of having to pay defendant's attorney's fees if plaintiffs do not prevail."); *Benedict v. Hewlett-Packard Co.*, No. 13-CV-0119-LHK, 2014 WL 587135, at *14 (N.D. Cal. Feb. 13, 2014) ("the Notice should advise potential plaintiffs of costs and *not just attorney's fees*") (emphasis added); *Barrera v. U.S. Airways Grp., Inc.*, Case No. CV–2012–02278–PHX–BSB, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013) ("The Court also agrees with Defendant that the 'Legal Effects' section of the notice must be amended to advise potential opt-in plaintiffs that they may be liable for costs and attorney's fees if Defendant prevails").

The proposed Notice is also incorrect and confusing because it references allegations against "AMN," one of Defendants' competitors, for no apparent reason. *See* Dkt. 32-1 at p. 1 ("The Lawsuit alleges that AMN was required to include the value of this benefit in calculating overtime rates of pay . . . .").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO

### 3. Any Notice Period Should Be Limited To Sixty Days.

Any notice provided to potential opt-in collective members should require a response not later than sixty days from the date of mailing, as opposed to the 120-day period proposed by Plaintiffs. The lengthy 120-day period requested by Plaintiffs is excessive, and contrary to the standard notice period, as courts in this District routinely authorize a 60-day notice period and reject lengthier periods. *See, e.g.*, *Labrie*, 2009 WL 723599, at *8 (rejecting plaintiffs' request for a 120-day deadline in favor of a 60-day deadline); *Delgado v. Ortho-McNeil, Inc.*, No. SACV 07-263 CJCMLGX, 2007 WL 2847238, at *4 (C.D. Cal. Aug. 7. 2007) ("Sixty days is sufficient time for a class member to receive the notice, ask any questions of Plaintiffs or their counsel, and make an informed choice as to whether or not they wish to participate."); *see also, e.g.*, *Helton v. Factor 5, Inc.*, No. C 10-04927 SBA, 2014 WL 1725734, at *1 (N.D. Cal. Apr. 29, 2014) (providing for 60 day notice period); *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (same); *Luque v. AT&T Corp.*, No. C 09-05885 CRB, 2010 WL 4807088, at *7 (N.D. Cal. Nov. 19, 2010) (same). Sixty days is sufficient even where the putative collective is geographically dispersed nationwide. *See Espenscheid v. DirecStat USA, LLC*, No. 09-CV-625-BBC, 2010 WL 2330309, at *13 (W.D. Wis. June 7, 2010) (setting 60-day opt-in period, even for a national class with "widespread geographic dispersal"). So too here, sixty days is ample time for putative collective action members to make an informed choice as to whether to participate.

### 4. Contact Information Should Be Provided To And Notice Should Be Sent By A Third Party Administrator, Not Plaintiffs Or Their Counsel.

Revealing that their interest is more than simply sending FLSA-authorized notice, Plaintiffs seek to have detailed contact information provided to their counsel for all travel nurses nationwide, including not only addresses but also telephone numbers and email addresses. This request should be rejected and the contact information should be given to a third-party administrator, not Plaintiffs' counsel, to handle the notice process. Plaintiffs' counsel's request for employees' names and private contact information purportedly to distribute notice jeopardizes the integrity of the Court-supervised notice process. Instead, use of a third-party administrator

best protects employees' privacy rights. *See*, *e.g.*, *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009) (denying plaintiff's request for contact information and appointing a claims administrator to send notice); *Russell v. Wells Fargo & Co.*, No. 07-cv-3993, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008) (same); *Adams v. Inter-Con Sec. Sys., Inc.*, 06-cv-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) (same); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, MDL Docket No. 1743, 2009 WL 248677, at *4 (D. Colo. Feb. 3, 2009) (finding third-party administrator appropriate "to protect the integrity of the process"); *Robinson v. Empire Equity Grp., Inc.*, No. 09-1603, 2009 WL 4018560, at *5 (D. Md. Nov. 18, 2009) (requiring notice be mailed by a third-party administrator to "safeguard[] the privacy of potential class members"). Use of a third party administrator is especially warranted here as Dalchau and Goodwin both testified that notices to them sent by plaintiffs' counsel after counsel obtained their contact information in a different case involving a different nurse staffing company somehow led to them suing Fastaff.[10]   (*See* Dalchau Dep. at 16:7-17:24, 75:23-80:25; Goodwin Dep. at 11:24-15:10).

Even in this digital era, sending notice by first class mail "is generally accepted as the 'best notice practicable.'"  *Young v. Hobbs Trucking Co., Inc.*, No. 3:15-cv-991, 2016 WL 3079027, at *3 (M.D. Tenn. June 1, 2016); *see also, e.g.*, *Russell*, 2008 WL 4104212, at *5 ("providing notice by first class mail will be sufficient to assure that potential collective action members receive actual notice of this case"); *Adams*, 242 F.R.D. at 541 ("First class mail is ordinarily sufficient to notify class members who have been identified."); *Cardoza v. Bloomin' Brands Inc.*, No. 13-CV-1820-JAD-NJK, 2014 WL 5454178 (D. Nev. Oct. 24, 2014) (ordering notice by first class mail and rejecting request for email addresses despite recognition that "email communications are now ubiquitous in this Information Age").

The same holds true with more force for telephone numbers, which represent an even greater intrusion on putative collective action members' privacy and create the potential for

---

[10] Plaintiffs' counsel has refused to produce these notices and instructed Plaintiffs not to answer questions about their contents but it is highly likely that they solicited Plaintiffs to sue Fastaff as a result of obtaining their contact information.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

abuse. *See, e.g.*, *Willner v. Manpower, Inc.*, No. C 11-2846 JST (MEJ), 2013 U.S. Dist. LEXIS 43821, at *5-6 (N.D. Cal. Mar. 27, 2013) ("Contact by telephone constitutes a more serious invasion of privacy because the putative class members cannot ignore a telephone call the same way they can ignore a solicitation that arrives by mail."). Although Plaintiffs contend they need telephone numbers to "trace potential putative class members if mailings are returned as undeliverable," this justification is entirely speculative and does not warrant providing personal telephone numbers for thousands of nurses.

Finally, to the extent the Court is inclined to order Fastaff to provide a third-party administrator with the email addresses and/or telephone numbers of putative collective action members, then there is absolutely no need for a 120-day period. Indeed, Plaintiffs justification for needing a 120-day notice period is that nurses may be traveling on assignment. (Pl. Mem. at 9-10). That concern is entirely mitigated if a third-party administrator can send notice via email.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Fastaff respectfully requests that the Court deny Plaintiffs' Motion for Conditional Certification of an FLSA Collective Action in its entirety. If the Court decides to grant Plaintiffs' Motion, Fastaff requests that the Court: (1) cutoff the collective action period as of May 17, 2017; (2) reject Plaintiffs' proposed Notice as explained above; and (3) order that any contact information be provided only to a third-party administrator for purposes of sending notice, not to Plaintiffs or their counsel.

Dated: December 15, 2017                      MORGAN, LEWIS & BOCKIUS LLP


By _____*/s/ John S. Battenfeld*_____
                     John S. Battenfeld

Attorneys for Defendants
FASTAFF, LLC, and U.S. NURSING
CORPORATION

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CONDITIONAL CERTIFICATION OF
A FLSA COLLECTIVE ACTION
Case No. 3:17-cv-01584-WHO