1   MORGAN, LEWIS & BOCKIUS LLP
2   John S. Battenfeld, Bar No. 119513
    john.battenfeld@morganlewis.com
3   300 South Grand Avenue
    Twenty-Second Floor
4   Los Angeles, California  0071-3132
    Telephone: +1.213.612.2500
5   Facsimile:  +1.213.612.2501

6   MORGAN, LEWIS & BOCKIUS LLP
7   Shannon B. Nakabayashi, Bar No. 215469
    shannon.nakabayashi@morganlewis.com
8   One Market, Spear Tower
    San Francisco, California 94105
9   Telephone: +1.415.442.1000
    Facsimile:  +1.415.442.1001
10

11  MORGAN, LEWIS & BOCKIUS LLP
    Anne-Marie Estevez, *admitted pro hac vice*
12  annemarie.estevez@morganlewis.com
    200 South Biscayne Boulevard, Suite 5300
13  Miami, Florida 33131
    Telephone: +1.305.415.3000
14  Facsimile:  +1.305.415.3001

15  Attorneys for Defendants
    FASTAFF, LLC and U.S. NURSING
16  CORPORATION

17                  UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19

20  STEPHANIE DALCHAU and MICHAEL          Case No. 3:17-cv-01584-WHO
    GOODWIN, individuals on behalf of
21  themselves and others similarly situated,   **DEFENDANTS' OPPOSITION TO**
                                                **PLAINTIFF'S MOTION FOR CLASS**
22                      Plaintiffs,             **CERTIFICATION**

23              v.                              Date:        March 28, 2018
                                                Time:        2:00 p.m.
24  FASTAFF, LLC; U.S. NURSING                  Courtroom:  4, 17th Floor
    CORPORATION; and DOES 1 to 10 inclusive,
25
                        Defendants.
26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ..................................................................................... 3

    A.   Fastaff Provides Travel Nurses with Housing Solutions Based on the Cost of
        Housing in the Location of Each Individual Assignment ...................................... 3

    B.   When Applying Its Housing Guidelines, Fastaff Makes Case-By-Case Evaluations
        Concerning Whether and to What Extent Each Individual Nurse's Housing
        Subsidy Is Ever Reduced ....................................................................................... 5

    C.   Fastaff Changed Its Housing Guidelines on May 17, 2017 .................................. 7

    D.   The Named Plaintiff's Employment with Fastaff ................................................. 8

III.    ARGUMENT ............................................................................................................. 8

    A.   The Class Certification Standard .......................................................................... 8

    B.   Plaintiff Cannot Establish Commonality or Predominance .................................. 8

       1.   Plaintiff's Exclusive Reliance on the AAL to Establish Commonality and
           Predominance Is Misplaced and Fails to Meet Either Requirement in Light
           of Evidence That the AAL Was Not Uniformly Applied ..................................... 9

           a.   Plaintiff's Legal Theory Is Dependent on Showing That Individual
               Nurses' Housing Subsidies Were Based Upon, and Varied with,
               Hours Worked .......................................................................................... 9

           b.   Courts Must Look to the Realities of How an Allegedly Unlawful
               Policy Was Actually Applied When Determining Commonality and
               Predominance ......................................................................................... 11

           c.   Fastaff's Policy to Exclude Housing Subsidies from the Regular
               Rate Does Not Establish Liability, and the Issue of Whether
               Housing Subsidies Were Actually Reduced on an Hourly Basis is
               an Inquiry for Which Individual Issues Predominate .............................. 13

       2.   Plaintiff's Newly Minted, Alternative Theories Are Irrelevant and Do Not
           Support Certification ........................................................................................... 16

    C.   Plaintiff Cannot Satisfy the Manageability and Superiority Requirements of Rule
        23(b)(3) ................................................................................................................ 18

    D.   Dalchau's Alleged Injury Is Not Typical for the Entire Class She Seeks to
        Represent .............................................................................................................. 19

    E.   Plaintiff's New Theory of Liability is at Odds with the Interests of Putative Class
        Members, and Makes Her An Inadequate Class Representative .......................... 20

    F.   Plaintiff's Derivative Claims Are Not Suitable for Class Certification for the Same
        Reasons as Her Overtime Claim and for the Additional Reason That They Require
        Individualized Inquiries Regarding Putative Class Members' Ability to Bring
        Waiting Time Penalty Claims ............................................................................... 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1

## TABLE OF CONTENTS
### (continued)

Page

G.  If Any Class Is Certified, It Must Be Limited to the Time Before Fastaff Changed Its Policy and Thus Eliminated any Possibility of the Necessary Condition Under Plaintiff's Liability Theory of Housing Subsidies on an Hourly Basis. ........................... 23

IV. CONCLUSION ................................................................................................................. 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Am. Express v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ..................................................................................................8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................................9

*Ayala v. U.S. Xpress Enters., Inc.*,
   No. EDCV 16-137-GW(KKX), 2016 WL 7586910 (C.D. Cal. Dec. 22, 2016)................12, 23

*Baouch v. Werner Enters., Inc.*,
   244 F. Supp. 3d 980 (D. Neb. 2017) ......................................................................10

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014)...................................................................................9

*Brennan v. Valley Towing, Co.*,
   515 F.2d 100 (9th Cir. 1975).................................................................................11

*Brown v. Am. Airlines, Inc.*,
   285 F.R.D. 546 (C.D. Cal. 2011) ..........................................................................21

*Bryant v. Serv. Corp. Int'l*,
   No. C 08-01190 SI, 2011 WL 855815 (N.D. Cal. Mar. 9, 2011) ...........................12

*Clarke v. AMN Services, LLC*,
   Case No. 2:16-cv-04132-DSF-KS ................................................................. *passim*

*Clemens v. Hair Club for Men, LLC*,
   No. C 15-01431 WHA, 2016 WL 1461944 (N.D. Cal. Apr. 14, 2016)...........12, 22

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)....................................................................................................9

*Cortes v. Mkt. Connect Grp., Inc.*,
   No. 14CV784-LAB (DHB), 2015 WL 5772857 (S.D. Cal. Sept. 30, 2015) ..........13

*Cruz v. Lawson Software, Inc.*,
   No. CIV. 08-5900 MJD/JSM, 2010 WL 890038 (D. Minn. Jan. 5, 2010) ........23, 24

*Cummins v. Starbucks Corp.*,
   No. 12-cv-06345-MWF(FFMx), 2014 WL 1379119 (C.D. Cal. Mar. 24, 2014) ..........13, 14

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)..............................................................................20, 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Flores v. City of San Gabriel,*
    824 F.3d 890 (9th Cir. 2016)....................................................................17

*Gagnon v. United Technisource, Inc.,*
    607 F.3d 1036 (5th Cir. 2010)..................................................................10

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..................................................................20

*Kamm v. Cal. City Development Co.,*
    509 F.2d 205 (9th Cir. 1975)....................................................................19

*Lee v. Pep Boys-Manny Moe & Jack of Cal.,*
    No. 12-05064-JSC, 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015) .........20

*Leyva v. Medline Indus. Inc.,*
    716 F.3d 510 (9th Cir. 2013)....................................................................15

*Minizza v. Stone Container Corp. Corrugated Container Division East Plant,*
    842 F.2d 1456 (3d Cir. 1988)...................................................................17

*Newman v. Advanced Tech. Innovation Corp.,*
    749 F.3d 33 (1st Cir. 2014) ............................................................. *passim*

*Oman v. Delta Air Lines, Inc.,*
    230 F. Supp. 3d 986 (N.D. Cal. 2017) ..........................................3, 22, 23

*Provine v. Office Depot, Inc.,*
    No. C 11-00903 SI, 2012 WL 2711085 (N.D. Cal. July 6, 2012) ...........15

*Ramirez v. United Rentals, Inc.,*
    No. 5:10-cv-04374, 2013 WL 2646648 (N.D. Cal. Jun. 12, 2013).........24

*Reich v. Interstate Brands Corp.,*
    57 F.3d 574 (7th Cir. 1995)......................................................................17

*Sharp v. CGG Land (U.S.), Inc.,*
    840 F.3d 1211 (10th Cir. 2016)................................................................10

*Shotgun Delivery, Inc. v. US,*
    269 F.3d 969 (9th Cir.  2001)...................................................................21

*Vasquez v. First Student, Inc.,*
    No. 2:14-CV-06760-ODW EX, 2015 WL 1125643 (C.D. Cal. Mar. 12, 2015)......................18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

1

### TABLE OF AUTHORITIES
#### (continued)

2

3
**Page(s)**

4
*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................12

5

*Wall-Mart Stores, Inc. v. Dukes*,
6
    564 U.S. 338 (2011) ....................................................................8, 9

7
*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009) ...............................................................9, 12

8

*Zinser v. Accufix Research Inst., Inc.*,
9
    253 F.3d 1180 (9th Cir. 2001) ................................................................8

10
**Statutes**

11
29 U.S.C. § 207(e)(2) ......................................................................17

12
Cal. Bus. & Prof. Code § 17200 .........................................................19, 22

13
Cal. Lab. Code § 203 ................................................................3, 19, 22, 23

14
Cal. Lab. Code § 510 ......................................................................19

15
**Other Authorities**

16
29 C.F.R. § 778.108 ......................................................................11

17
29 C.F.R. § 778.211 ......................................................................18

18
29 C.F.R. § 778.217 ......................................................................17

19
29 C.F.R. § 778.224 ......................................................................17

20
Treas. Reg. § 1.62-2(d)(3)(i) ...............................................................21

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1    **I.     INTRODUCTION**

2          It is a fundamental principle of class action jurisprudence that merely pointing to an allegedly

3    unlawful employment policy is insufficient to satisfy class certification requirements.  Indeed, where a

4    defendant's implementation of a given policy (even an allegedly unlawful policy) varies from employee

5    to employee in ways that impact potential liability, a plaintiff cannot meet the commonality and

6    predominance prongs of Rule 23, and class certification is not appropriate.  Despite this well-established

7    principle, Plaintiff Stephanie Dalchau ("Plaintiff" or "Dalchau") asks this Court to certify a class based

8    solely on a written housing subsidy policy that was not even the same throughout the relevant period.

9    Significantly, Plaintiff ignores undisputed record evidence demonstrating that the policy at issue was not

10   uniformly applied to the putative class and did not uniformly result in reductions to housing subsidy

11   payments that were made on an hourly basis.  For this fundamental reason, as well as additional reasons

12   set forth below, this Court should deny Plaintiff's motion.

13         Plaintiff's sole legal theory is that housing subsidy payments Defendant Fastaff, LLC made to

14   travel nurses must be included in those nurses' regular rates of pay *because* the amounts of the

15   payments were "based upon, and varie[d] with, the number of weekly hours worked by" the nurses.

16   (Compl. ¶ 20).  Under the limited authority addressing housing subsidy payments that Plaintiff relies on

17   to support her theory, a necessary condition for potential liability is that the monetary amount of housing

18   subsidies paid to a nurse was reduced on an hourly, rather than daily, basis when the nurse was not

19   available to work the agreed guaranteed hours.  Critically, the only purported common proof that

20   Plaintiff offers to show that Fastaff's housing per diems were actually reduced based on hours worked is

21   the language of the Assignment Agreement Letter.  Plaintiff does not offer *any* evidence to try to show

22   that Fastaff uniformly applied its housing guidelines to the putative class.  This failure is not inadvertent.

23   As demonstrated below, Plaintiff knows that Fastaff's housing guidelines were *not* applied uniformly as

24   to the key issue under her legal theory.

25         Here, the record evidence is undisputed that Fastaff made individual determinations regarding

26   whether to *actually* reduce a nurse's housing subsidy when the nurse did not work all of his or her

27   guaranteed hours.  For example, the record shows that Fastaff paid certain nurses their maximum

28   housing subsidy even when they worked fewer than their guaranteed hours due to personal

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1   unavailability.  Under the out-of-circuit case law relied upon by Plaintiff, a nurse whose housing subsidy

2   did not change based on hours worked—e.g., a nurse who received her full housing subsidy even when

3   she worked fewer than her guaranteed hours—would not have a regular rate claim.  Because the

4   threshold issue for Plaintiff's claims requires individualized inquiries to determine liability as to each

5   individual class member, class treatment of Plaintiff's claims is not appropriate.  Further, after May 17,

6   2017, the policy changed such that reductions to a housing subsidy were *never* made on an hourly basis.

7       The variations in how (and whether) Fastaff applied its housing guidelines distinguish this case

8   from the cases on which Plaintiff relies.  For example, Plaintiff points to *Clarke v. AMN Services, LLC*,

9   Case No. 2:16-cv-04132-DSF-KS at Dkt. No. 60 (C.D. Cal. Oct. 12, 2017), a recent case that they argue

10  granted class certification where "claims challenge[d] a common policy of excluding specific payments

11  from the regular rate when calculating overtime."  In *Clarke* and Plaintiff's other cited cases, however, it

12  was not the exclusion of payments from the regular rate that by itself created grounds for certification.

13  By definition, such exclusion must occur in every regular rate case, but not every regular rate case is

14  certifiable.  Rather, a regular rate case is certifiable only if the legal theory of *why* a particular payment

15  should be included in the regular rate can be established as to the entire class based on common proof.

16  In *Clarke* and the other cases cited by Plaintiff, the payment at issue was uniformly reduced on an

17  hourly basis when uniform events occurred.  That is the precise opposite of the facts in this case (where

18  the question of whether a nurse's housing subsidy was actually reduced on an hourly basis when

19  guaranteed hours were not met requires individualized inquiries to answer).

20      Beyond Plaintiff's inability to establish the key threshold issue for her California claims through

21  common proof, Plaintiff's Motion falls short in several other respects.  First, the need for individual

22  inquiries to determine whether or not each class member's housing subsidy was reduced on an hourly

23  basis makes a class action unmanageable.  Second, proceeding as a class action is not superior to other

24  methods of resolving the disputed claims because there is another lawsuit with a proposed classwide

25  settlement that would largely resolve the class claims that Plaintiff's seeks to certify here.  Third,

26  Plaintiff's claims are not typical of the entire proposed class because, unlike many class members, she

27  never received company-provided housing.  Fourth, Plaintiff is an inadequate class representatives

28  because her new (legally unsupported) theory that housing subsidies can never be reduced even on a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

daily basis is at odds with the interests of putative class members. Specifically, if Plaintiff's new theory prevails, Fastaff will be unable to offer housing subsidies as a non-taxable benefit because Fastaff would risk not meeting the tax requirement that there be a correlation between the housing subsidy reimbursements and the expenses incurred by Fastaff's travel nurses. This loss of an important tax benefit to travel nurses would do significant economic harm to many putative class members. Fifth, as to the Section 203 claim, certification should be independently denied because many putative class members are not California residents and worked assignments both inside and outside of California. As such, applying the multi-factor test used by this Court in *Oman v. Delta Air Lines, Inc.*, 230 F. Supp. 3d 986 (N.D. Cal. 2017) (Orrick. J.), to evaluate Fastaff's extraterritoriality defenses would require individualized inquiries that predominate over any common questions.

Finally, even if the Court decides to grant Plaintiff's Motion—which it should not—it should end the class period as of May 17, 2017. Fastaff changed its housing guidelines on May 17, 2017 so that any reductions to housing subsidies were made solely on the basis of days, hours, not worked. Because this change eliminates the necessary predicate of Plaintiff's legal theory under the authority on which she relies, (that the amount of housing subsidies was based on, and varied with, *hours* worked), there can be no potential liability, and therefore no class certification, after that date.

## II.   FACTUAL BACKGROUND

### A.   Fastaff Provides Travel Nurses with Housing Solutions Based on the Cost of Housing in the Location of Each Individual Assignment

Fastaff is an industry leader in nurse staffing. (Declaration of Kimberly Windsor ("Windsor Decl.") at ¶ 2).[1] Fastaff partners with healthcare facilities across the country that are short staffed. (Transcript of the Deposition of Michelle Savell ("Savell Dep.") at 39:8-10, attached as Exhibit D to the Declaration of Russell R. Bruch ("Bruch Decl.")). Fastaff provides these facilities with nurses who deliver continuous care for a period typically lasting between two and thirteen weeks. (Transcript of the Deposition of Kimberly Windsor ("Windsor Dep.") at 16:6-13, attached as Exhibit C to Bruch Decl.; Savell Dep. at 10:17-20).

---

[1] The Declaration of Kimberly Windsor was previously submitted in support of Fastaff's Opposition to Plaintiffs' Motion for Conditional Certification of a FLSA Collective Action (Dkt. No. 36). For the Court's convenience, Fastaff is also submitting Ms. Windsor's Declaration here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1        The vast majority of the travel nurses Fastaff employs take assignments more than 50 miles

2  away from their permanent residences. (Windsor Decl. ¶ 4). Because the travel nurses are working

3  away from home, Fastaff normally provides them with two housing options while on assignment. (*Id.*).

4  The first option is that Fastaff will select and directly pay for housing. The second option is that Fastaff

5  will provide a nurse a weekly subsidy in an amount that is calculated to reimburse the nurse for the

6  expected weekly cost of the housing a nurse finds for himself or herself. (*See* Windsor Dep. at 27:4-9).

7  In rare circumstances, the facility at which a travel nurse is working on assignment will supply the nurse

8  with housing. (*See* Windsor Dep. at 27:10-12, 28:19-29:1). A nurse's recruiter will communicate the

9  housing options to the nurse and it is up to the nurse to decide which of the options to accept. (*See*

10  Windsor Dep. at 28:4-10; 29:12-15, 30:21-25; Savell Dep. 17:8-16; 18:6-21). [2]

11        If a nurse elects housing provided and paid for by Fastaff, the nurse does not receive any

12  payment at all because Fastaff pays for the housing. If a nurse selects the housing subsidy, the weekly

13  amount of the subsidy is included in the nurse's weekly paycheck, but is identified as a separate non-

14  taxable reimbursement amount in the nurse's pay statement. (*See* Windsor Dep. at 32:1-13). In order to

15  determine the amount of the housing subsidy such that it covers weekly expenses in the geographic area

16  of any individual assignment, Fastaff's housing and travel department researches the cost of housing in

17  the area of the assignment and the Sales Department calculates the amount of the weekly subsidy based

18  on that information. (*See* Windsor Dep. at 29:24-30:9, 33:1-14; Savell Dep. at 38:19-21). Contrary to

19  Plaintiff's unsupported theory in this case, the subsidy is not provided to increase a nurse's wages.

20  Rather, it is intended to cover seven days of housing expenses for the specific geographic area in which

21  each individual nurse is working. (Windsor Dep. at 33:23-25; 41:24-42:5). Because the subsidy is

22  designed to reimburse a nurse for the amount of the housing expenses he or she incurs while on

23  assignment away from home, the amount of the subsidy is treated as an expense reimbursement, not as

24  wages. (Windsor Dep. at 27:15-22; Windsor Decl. at ¶ 5).

25

26

27  [2] Each travel nurse is assigned to one of approximately thirty individual recruiters who help match the nurse with a facility in need. *See* Savell Dep. at 15:12-16; Windsor Decl. ¶ 3.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

**B.**   **When Applying Its Housing Guidelines, Fastaff Makes Case-By-Case Evaluations Concerning Whether and to What Extent Each Individual Nurse's Housing Subsidy Is Ever Reduced**

Fastaff informs travel nurses of its housing guidelines through a Company Assignment Agreement Letter ("AAL") that each nurse receives and signs prior to starting an assignment. (Savell Dep. at 20:16-21). Each AAL is customized to show which housing option a nurse chose and, if the chosen option is a subsidy, the weekly amount of the subsidy. Nurses receive a new AAL for each assignment. (Savell Dep. at 29:19-22). Fastaff's recruiters may also independently communicate the requirements for a nurse to receive the maximum housing subsidy. (Savell Dep. at 20:10-13).

Prior to May 2017, Fastaff's housing guidelines, as recited in the AAL, stated that a nurse's housing benefit would be prorated if the nurse did not work his or her the guaranteed hours due to the nurse's availability: "In the event you are unable to satisfy the weekly guaranteed hours: [. . .] Due to any reason the employee makes themselves unavailable, prorated housing benefit shall be applied." (*See* Ex. 1 to Declaration of Stephanie Dalchau ("Dalchau AAL"), Dkt. No. 32-4).[3] While this general language was common across AALs at that time, Fastaff's *actual implementation and application* of its housing guidelines was the opposite of common. Contrary to Plaintiff's un-evidenced suggestions, Fastaff did not uniformly reduce nurses' housing subsidies when they worked less than their guaranteed hours due to personal unavailability. Instead, as the undisputed record evidence shows, if a given nurse was unable to work a shift, "the housing stipend may *or may not* be adjusted, reduced." (Windsor Dep. at 60:7-15; *see also* Savell Dep. at 30:8-31:17 (testifying that there were "[m]any situations in which the [full] stipend was paid regardless of hours worked"); Transcript of the Deposition of Allison Strong ("Strong Dep.") at 19:7-12, 33:13-17, attached as Exhibit E to Bruch Decl. ("Q: What happens to the stipend when a nurse doesn't meet their hours obligation and it's due to the nurse being unavailable as opposed to the facility calling them off? A: It depends on the circumstance . . . .")).

Critically, Fastaff's actual practice involved an individualized assessment of whether a nurse's inability to work a certain number of hours would affect his or her housing subsidy. When a nurse was

---

[3] Significantly, the nurse could not increase the amount of the subsidy by working more than the guaranteed hours, and Fastaff never increased a nurse's housing subsidy based on hours worked. (Windsor Decl. at ¶ 7).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1    unable to work his or her guaranteed hours for personal reasons, Fastaff reviewed the situation and—

2    based on the unique circumstances of each situation, including the reason the nurse was unavailable—

3    decided whether to actually reduce a nurse's housing stipend. (Windsor Dep. at 60:7-23, 61:3-19;

4    68:23-69:8, 70:8-22; Strong Dep. at 21:16-22:16). In particular, the individual recruiter assigned to a

5    given travel nurse and someone in the payroll department would discuss the circumstances behind a

6    nurse's not working his or her guaranteed hours and then decide on a case-by-case basis whether to

7    reduce the housing subsidy. (Windsor Dep. at 75:2-13; Strong Dep. at 43:19-44:13).

8         Thus, despite the language Plaintiff seizes on in the earlier AAL, in practice, some travel nurses

9    received their full housing subsidy regardless of whether they fell short of their guaranteed hours due to

10   personal unavailability. (Windsor Dep. at 61:25-62:12; Savell Dep. at 31:14-17). For example, as one

11   travel nurse attested, Fastaff *never* reduced his subsidy despite him not meeting his guaranteed hours on

12   at least one occasion. (Declaration of Johnathan Willemain ("Willemain Decl.") at ¶ 4, Dkt. No. 37).[4]

13        In an attempt to obfuscate the highly individualized nature of Fastaff's application of its housing

14   guidelines, Plaintiff misrepresents that each travel nurses *earns* his or her housing subsidies by working

15   and that "Fastaff determined the amount of housing benefits earned each week 'through the employee's

16   time sheet." (Pls. MPA at 4-5). The deposition testimony that Plaintiff cites, however, supports only

17   the unremarkable proposition that Fastaff would look at a nurse's timesheets to determine the hours that

18   the nurse worked or was available to work. (*See* Windsor Dep. at 62:23-63:22; Strong Dep. at 18:1-

19   19:1). The record evidence that actually addresses Plaintiff's contention is clear: the housing subsidy is

20   not earned. (Savell Dep. at 18:13-18). Rather, as explained above, the amount of the subsidy is

21   calculated based on housing costs in the geographic area of each individual assignment and is included

22   in nurses' paychecks to reimburse them for housing expenses they incur in furtherance of completing

23   their assignments. As such, the fact that housing subsidies are paid on a weekly basis is not evidence

24   that they are *earned*, only that expenses incurred are reimbursed. Furthermore, regardless of the spin

---

[4] Mr. Willemain did not work for Fastaff in California and thus is not a putative class member here. (*See* Willemain Decl. ¶ 1). Nonetheless, the fact that his housing subsidy was never reduced, including for weeks where he worked fewer than his guaranteed hours due to personal unavailability, is relevant evidence that Fastaff did not uniformly apply the housing guidelines stated in the AAL.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

Plaintiff attempts to put on Fastaff's policies and practices, the factual record is undisputed that the decision of whether to reduce a given nurse's housing subsidy based on his or her guaranteed hours is based on an individualized, case-by-case assessment of the nurse's individual situation.[5]

### C. Fastaff Changed Its Housing Guidelines on May 17, 2017

On or about May 17, 2017, Fastaff changed its guidelines so that reductions to a housing subsidy, if any, would be made solely on the basis of *full days* not worked.  (Windsor Dep. at 37:5-11, 67:5-21; Strong Dep. at 29:20-30:6).  Under the revised policy, if a nurse works any portion of a day, the nurse receives the full housing subsidy.  (Strong Dep. at 30:2-9, 33:18-25; Windsor Dep. at 67:7-10).  Fastaff also revised its guidelines so that nurses who select company-provided housing never have deductions made regardless of whether they work their guaranteed hours.  (Strong Dep. at 39:22-41:13).  Moreover, under the revised policy, nurses working assignments within fifty miles of their residences are not offered a weekly housing subsidy.  (Windsor Dep. at 37:12-38:14).  Contrary to Plaintiff's argument, Fastaff did not offer nurses working "local" assignments higher hourly wages "to account for the loss of stipend pay."  (Pls. MPA at 7).  Instead, the potential for higher wages existed where a nurse was returning to a facility where she previously completed an assignment and was based on individualized assessments of each nurse's specialties and experience.  (Savell Dep. at 75:12-76:23).[6]

Fastaff subsequently revised its AAL in November 2017 to reflect the previously-made change to its housing guidelines practices.  (Savell Dep. at 47:16-19; Strong Dep. at 72:4-13).  Consistent with the change made on May 17, 2017, since that date Fastaff has not reduced any travel nurse's housing subsidy unless they miss an entire day of work due to unavailability and do not work their guaranteed hours for the week.  Fastaff also has not deducted amounts for company-provided housing under any circumstances.  (Windsor Decl. ¶¶ 8-10, and Exs. A & B thereto).

---

[5] Plaintiff also claims that "the purpose of tying the housing benefit to hours worked was to ensure 'accountability.'"  (Pls. MPA at 7).  The only support for this inaccurate claim, however, is Ms. Savell's admitted speculation about the purposes behind a policy that she was not involved in drafting.  (Savell Dep. at 36:8-38:5, 68:10-69:10).

[6] Further, the potential increase of a few dollars per hour based on experience/skills "wouldn't even scratch the surface" of equaling the amount of a housing subsidy.  (Savell Dep. at 76:7-14).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1

### D.   The Named Plaintiff's Employment with Fastaff

Plaintiff Dalchau worked for Fastaff from September 2015 to November 2015 on an assignment at Petaluma Valley Hospital in Petaluma, California.  (Transcript of the Deposition of Stephanie Dalchau ("Dalchau Dep.") at 34:24-35:6, attached as Exhibit A to Bruch Decl.).  At the time of her one Fastaff assignment, Dalchau was a resident of Texas.  (*Id*. at 32:16-33:6).  Separate from her wages, because Dalchau travelled to California for the assignment, she was offered and chose a housing subsidy from Fastaff that was calculated based on housing prices in Petaluma to reimburse her for her expected housing expenses while on the assignment.  (*Id*. at 38:12-18).  Plaintiff Goodwin, who does not bring this motion because he has no standing to pursue California claims, worked for Fastaff from October 2016 to November 2016 on an assignment at Goshin Hospital in Goshin, Indiana.  (Transcript of the Deposition of Michael Goodwin ("Goodwin Dep.") at 16:23-17:1, attached as B to Bruch Decl.).  Goodwin also chose a housing subsidy from Fastaff that was calculated based on housing prices in Goshin to reimburse him for his expected housing expenses during the assignment.  (*Id*. at 32:1-25, 33:16-25, 38:17-39:2).  Both Plaintiffs admitted that they do not have any knowledge of the terms and conditions regarding company-provided housing (which they never chose) or the housing subsidies other travel nurses received.  (Dalchau Dep. at 48:18-23, 87:4-8; Goodwin Dep. at 9:18-10:2, 46:15-17).

### III.   ARGUMENT

### A.   The Class Certification Standard

"[Rule 23] imposes stringent requirements for certification that in practice exclude most claims."  *Am. Express v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  Plaintiff bears a heavy burden of showing that their proposed class meets all of Rule 23(a)'s requirements and the requirements of at least one of Rule 23(b)'s subsections.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

### B.   Plaintiff Cannot Establish Commonality or Predominance

Rule 23(a)(2) requires that Plaintiff establishes questions common to the class by offering "significant proof" that the questions will resolve a significant aspect of potential class member claims on a classwide basis.  *Wall-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011).  Under *Dukes*, a common question is not enough; rather, certification is only appropriate if a "determination of its truth

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," and requires courts to "take a 'close look' at whether common questions predominate over individual ones."). Predominance requires that "common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014). As such, the predominance inquiry "requires courts to weigh the common issues against the individual issues." *Id.* (citing *Dukes*, 131 S. Ct. at 2556); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (describing "the main concern in the predominance inquiry" as "the balance between individual and common issues").

Here, Plaintiff fails to raise common questions that will generate resolution-driving common answers. The fact that Fastaff has excluded housing reimbursements from the regular rate is not a common answer that will drive the resolution of the litigation. Rather, under Plaintiff's theory, it is how the housing reimbursements are calculated—i.e., whether they are based on, and vary with, hours worked—that matters. The answer to that question is not common, and any common issues do not predominate over the individualized inquiries needed to resolve the "based on hours worked" issue.

### 1. Plaintiff's Exclusive Reliance on the AAL to Establish Commonality and Predominance Is Misplaced and Fails to Meet Either Requirement in Light of Evidence That the AAL Was Not Uniformly Applied

#### a. Plaintiff's Legal Theory Is Dependent on Showing That Individual Nurses' Housing Subsidies Were Based Upon, and Varied with, Hours Worked

Based on Plaintiff's filings in this action, Plaintiff's stated legal theory for her overtime claim is that "*because* the right to receive the full value of the housing subsidy was conditioned on an employee

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1  satisfying minimum weekly work requirements and *because* the formula used to adjust that subsidy was

2  based on hours worked, Defendants were required to include the value of the housing subsidy in the

3  regular rate." (*See* Dkt. No. 39, at 6) (citing *Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33,

4  35 (1st Cir. 2014)); *see also* Compl. ¶ 20 (similar); Pl. MPA at 11 (similar).

5          In deciding this Motion, it is critical to understand the underlying authority for Plaintiff's legal

6  theory (which no California court has adopted).  The leading case relied on by Plaintiff, *Newman*,

7  derives its holding not from a Department of Labor ("DOL") regulation, but rather from a DOL Field

8  Operations Handbook.  That Handbook opines that "if the amount of the per diem . . . is based upon and

9  thus varies with the number of hours worked per day or week," such payments must be included in the

10  regular rate. 749 F.3d at 37 (quoting Field Operations Handbook).  Significantly, the Handbook also

11  states, as the *Newman* court noted, "that it is a permissible result for an employer to reduce a day's per

12  diem, such as by paying half of a day's worth of per diem where an employee worked for half of the

13  day." *Id.*  Following the views of the Handbook, *Newman* held that a per diem payment does *not* need

14  to be included in the regular rate if it "use[s] a day as its measuring unit and not an hour," but a per diem

15  must be included in the regular rate if "the per diem method makes reductions from that maximum on

16  an hourly basis—such that it would reduce the total per diem by a mere hour's worth." *Id.* at 38; *see*

17  *also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041-42 (5th Cir. 2010) (holding that

18  per diem that varied by the hour was not an actual expense reimbursement and had to be included

19  in regular rate); *Baouch v. Werner Enters., Inc.*, 244 F. Supp. 3d 980, 994-96 (D. Neb. 2017)

20  (holding that per diem payments that were "based on work performed, and varied in correlation

21  with the amount of hours worked" had to be included in regular rate).  Stated differently, under

22  Plaintiff's theory, if housing subsidy payments are not based on, and do not vary with, hours

23  worked, then they are properly excluded from the regular rate.  *See Sharp v. CGG Land (U.S.), Inc.*,

24  840 F.3d 1211, 1216 (10th Cir. 2016) (holding that per diem meal reimbursements were properly

25  excluded from the regular rate because, like here, they were not tied to hours worked and "[e]mployees

26  do not receive higher per diem payments after working longer hours").

27          In sum, under the case law supporting Plaintiff's theory, the question of whether housing

28  subsidies must be included in an employee's regular rate cannot be answered simply based on Fastaff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1  excluding subsidies from the regular rate.  A necessary condition of Plaintiff's theory is that the amount

2  of each nurse's housing subsidy was in fact "based on, and varied with," each nurse's *hours* worked.

3       Strikingly, the only purported "common proof" that Plaintiff offers in support of her certification

4  arguments is the prior version of Fastaff's AAL, which stated that a nurse's housing allowance would be

5  prorated if the nurse did not work his or her guaranteed hours due to personal unavailability.  Plaintiff's

6  exclusive reliance on this prior AAL is insufficient to establish commonality—much less to satisfy the

7  more stringent showing that common issues predominate—because (1) the prior AAL did not uniformly

8  result in hours-based reductions when nurses did not work guaranteed hours; and (2) under the current

9  practice, reductions are *never* made on an hourly basis.[7]

10 / 11
**b.   Courts Must Look to the Realities of How an Allegedly Unlawful Policy Was Actually Applied When Determining Commonality and Predominance**

12      As Plaintiff acknowledges, the California Labor Code does not define the term "regular rate of

13 pay," so courts look to the Fair Labor Standards Act's regular rate regulations and case law interpreting

14 those regulations in determining what is excludable from compensation when calculating the "regular

15 rate."  (Pl. MPA at 12-13).  Plaintiff fails to note, however, that under these regular rate regulations, the

16 determination of what is included in the regular rate "must be drawn from what *happens* under the

17 employment contract."  29 C.F.R. § 778.108 (emphasis added).  Deciding a regular rate question

18 requires courts "to look beyond that which the parties have purported to do."  *See Brennan v. Valley*

19 *Towing, Co.*, 515 F.2d 100, 105 (9th Cir. 1975).  Indeed, the primary decision that Plaintiff relies on

20 unequivocally states that workplace realities, not the mere existence of written agreements or policies,

21 determine what must be included in the regular rate.  *See Newman*, 749 F.3d at 37 ("the regular rate . . .

22 must be discerned from what *actually happens* under the governing employment contract.") (emphasis

23 added)); *see also id.* at 39 (in examining "the substance of a purported per diem payment . . . the

24 goal is to pierce the labels that parties affix to the payments and instead look to the *realities* of the

25 method of payment" (emphasis added)).  Applied here, the case supporting Plaintiff's theory of

26

27 / 28
[7] As discussed below, any attempt by Plaintiff to dodge this liability question by changing her theory fails because their new theory is based upon an inapplicable regulation and is contrary to the more relevant authority they cite in their Motion.  *See infra* at 16-18.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1    liability requires the trier of fact to look beyond the language of Fastaff's AALs to determine how

2    the Company *actually* provided housing subsidies to each putative class member.  Specifically,

3    the trier of fact must evaluate whether each individual nurse's subsidy was actually reduced on an

4    hourly basis if guaranteed hours were not worked.

5            The requirement to look at the realities of what *actually happens* under a claimed uniform

6    policy when determining whether housing subsidies must be included in the regular rate mirrors

7    the Ninth Circuit case law holding that a uniform exemption policy is not enough, by itself, to

8    support class certification.  *See, e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953,

9    958-59 (9th Cir. 2009) (holding that existence of employer's uniform classification policy did not

10   establish predominance and that "the district court abused its discretion in relying on that policy to the

11   near exclusion of other factors relevant to the predominance inquiry."); *Vinole v. Countrywide Home*

12   *Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (reaching same conclusion).  These cases are based on

13   the blackletter principle that a uniform policy standing alone does not support class certification, and

14   that it is necessary to examine how the policy is *actually applied* when assessing whether commonality

15   and predominance are met.  *Cf. Wells Fargo*, 571 F.3d at 959 ("Whether such a policy is in place or not,

16   courts must still ask where the individual employees actually spent their time.").

17           For this reason, courts routinely deny class certification—including in regular rate cases and

18   more broadly—where the alleged policy does not establish liability, but rather that individualized

19   inquiries about the implementation of that policy must be made to determine liability.  *See, e.g.*, *Bryant*

20   *v. Serv. Corp. Int'l*, No. C 08-01190 SI, 2011 WL 855815, at *10 (N.D. Cal. Mar. 9, 2011) (denying

21   certification of claim that common policy improperly calculated class members' regular rates of pay by

22   excluding lump sum payments because "[d]etermining whether and to what extent any employee's rate

23   of pay was affected by a lump sum payment can only be done on an individualized basis, which means

24   that liability, not just damages, would require individualized inquiry"); *Clemens v. Hair Club for Men,*

25   *LLC*, No. C 15-01431 WHA, 2016 WL 1461944, at *5 (N.D. Cal. Apr. 14, 2016) (denying certification

26   under theory that employer's policy was facially unlawful because "Plaintiffs' bald assertion that Hair

27   Club's policy did not comply with the law does not establish a common question that will *predominate*

28   in the adjudication of the claims of the putative class"); *Ayala v. U.S. Xpress Enters., Inc.*, No. EDCV

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1   16-137-GW(KKX), 2016 WL 7586910, at *8 (C.D. Cal. Dec. 22, 2016) (finding predominance not met

2   despite allegedly defective policy because "absent evidence that USX's policy, as implemented class-

3   wide, violates California law, the Court would have to conduct individualized inquiries into whether

4   each putative Class Member took meal and rest breaks, and if they did not, the reasons why."); *Cortes v.*

5   *Mkt. Connect Grp., Inc.*, No. 14CV784-LAB (DHB), 2015 WL 5772857, at *6-7 (S.D. Cal. Sept. 30,

6   2015) (finding that existence of handbook that "include a break policy that, on its face, violates

7   California law" did not establish predominance where there was evidence that handbook did not reflect

8   employer's actual practices); *Cummins v. Starbucks Corp.*, No. 12-cv-06345-MWF(FFMx), 2014 WL

9   1379119, at *22 (C.D. Cal. Mar. 24, 2014) (denying certification because "to find that common issues

10  predominate, the Court would have to rely on the defective rest period policy to the exclusion of other

11  evidence in the record").

12          **c.     <u>Fastaff's Policy to Exclude Housing Subsidies from the Regular
                      Rate Does Not Establish Liability, and the Issue of Whether
13                    Housing Subsidies Were Actually Reduced on an Hourly Basis
                      is an Inquiry for Which Individual Issues Predominate</u>**

14          The same type of individualized inquiries that prevented class certification in the above cases

15  are also necessary in this case.  Plaintiff ignores what actually happened to maximum housing subsidies

16  paid pursuant to the AAL, and ask this Court to disregard settled Ninth Circuit case law and certify a

17  class based solely on the language in the AAL to the exclusion of other record evidence.  Specifically,

18  Plaintiff lists five pieces of "common evidence" that she contends establish that common issues

19  predominate under their legal theory that Fastaff's housing allowances were reduced on an hourly basis

20  and therefore must be included in the regular rate.  (*See* Pls. MPA at 11-12).  These points, however,

21  merely show the existence of two versions of the AAL and do not provide any common evidence that

22  the AALs were uniformly applied such that maximum housing subsidies were always reduced on an

23  hourly basis when individual nurses failed to work their guaranteed hours.

24          Plaintiff's fifth bullet point correctly states that Fastaff uniformly excluded the amount of

25  housing subsidies and company-provided housing from nurses' "regular rate" when calculating

26  overtime pay.  (Pls. MPA at 12).  That uniform policy, however, does not create liability under

27  Plaintiff's legal theory *unless* the maximum amount of a housing allowance was, *in actual practice*,

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1 based upon, and varied with, hours worked due to the fact that all putative class member had their

2 housing subsidies reduced when they failed to work their guaranteed hours. Plaintiff's purported

3 "common evidence" fails to show that was the case. Rather, the "common evidence" that Plaintiff

4 provides is nothing more than paraphrases of language in the current and prior versions of the AAL.

5 (*See id.* at 11-12). As to the current policy, Plaintiff concedes that any reductions are made on a daily,

6 not hourly, basis. As to the prior version of the AAL, Plaintiff conspicuously ignores whether there is

7 any common evidence that individual housing subsidies were actually (and uniformly) reduced on an

8 hourly basis.

9       The evidence ignored by Plaintiff shows that, under Fastaff's actual prior practices, if an

10 individual nurse was unable to work guaranteed hours, the nurse's subsidy may *or may not* have been

11 reduced depending on the discretionary decision made by Fastaff's recruiting and payroll departments

12 after evaluating the specific circumstances of each situation— including the specific reason the nurse

13 was unavailable—on a case-by-case basis. (*See supra* at 5-7). Although Plaintiff characterizes these

14 decisions as limited to situations where a nurse "presented a particular compelling excuse – such as a

15 'personal emergency,'" (Pls. MPA at 11 n.1), in fact, there were "many situations in which the stipend

16 was paid regardless of hours worked" based on a variety of reasons. (*See* Savell Dep. at 30:24-31:17,

17 33:8-20, 70:17-71:18; Windsor Dep. at 61:14-62:12; Strong Dep. at 21:2-22:7). As such, the AAL by

18 itself cannot be the "glue" that creates common answers to the question of whether housing subsidies

19 paid to nurses were based on hours worked (and thus needed to be included in the regular rate).

20 (Windsor Dep. at 60:7-62:12; Savell Dep. at 30:8-31:13; Strong Dep. at 19:7-22:7, 26:11-17, 37:14-21).

21       In fact, the undisputed record evidence shows that the answers to this question are not common,

22 but, rather, are highly individualized. Many nurses received their maximum housing allowance

23 regardless of the hours they worked or were available to work, including when they did not meet their

24 guaranteed hours. (*See* Savell Dep. at 30:24-31:17, 33:8-20, 70:17-71:18; Windsor Dep. at 61:14-

25 62:12; Strong Dep. at 21:2-22:7; Willemain Decl. at ¶ 4). For those nurses, the amount of the housing

26 stipend was *never* reduced on an hourly basis or tied to hours in any way. (*See supra* at 5-7). The lack

27 of any connection between hours worked and the amount of the stipend means that those nurses have no

28 claim under Plaintiff's theory. It also means that liability for any given class member will be dependent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1   upon the highly individualized question of whether the maximum amount of a nurse's housing subsidy

2   was dependent on his or her hours worked.

3       For this reason, the AAL—the only purported common evidence that Plaintiff offers—is simply

4   incapable of resolving liability questions on a class-wide basis under Plaintiff's legal theory because it

5   does not provide common proof that *all* nurses' housing allowances were *actually* reduced on an

6   hourly basis in practice. Rather, liability under Plaintiff's legal theory turns on Fastaff's individualized

7   application of its housing "policy" on a nurse-to-nurse and case-by-case basis.

8       To support her certification arguments, Plaintiff cites three cases—*Leyva v. Medline Indus. Inc.*,

9   716 F.3d 510 (9th Cir. 2013); *Clarke* and *Provine v. Office Depot, Inc.*, No. C 11-00903 SI, 2012 WL

10  2711085 (N.D. Cal. July 6, 2012)—and claim that those courts found certification appropriate where "a

11  lawsuit challenges the legality of an employer's uniform policy of excluding certain payments from the

12  'regular rate.'" (Pls. MPA at 2-3, 18-19). Plaintiff glosses over, however, a key distinction between

13  those cases and the present one. There is no indication in *Leyva*, *Clarke*, or *Provine* of *any* variation in

14  how the employers applied the payment policy at issue, much less that they made case-by-case

15  assessments. In *Leyva*, the only individualized issue was damages, and there was no discussion

16  of any lack of uniformity in how the employer applied its policy. 716 F.3d at 513-14. So too in

17  *Provine*, there was no evidence that the employer's application of its bonus payment policy did

18  not consistently follow the written terms of its policy. *See* 2012 WL 2711085, at *1.

19      Finally, in *Clarke*, the only certification decision involving per diems, there was no

20  evidence that the employer's practice ever deviated its written policy of adjusting per diem

21  payments on an hourly basis if employees failed to work minimum weekly hours. Oct. 21, 2017

22  Order, Ex. A to Pls. MPA. Thus, although *Clarke* has some factual similarities to this case—in

23  that it involves per diem payments to travel nurses and adjustment to those per diem payments—it

24  is fundamentally different because, unlike here, there was no evidence that AMN did not

25  uniformly apply its per diem policies. Thus, in *Clarke*, the court had no basis to conclude that

26  individualized inquiries would be needed to determine whether nurses actually had their per diem

27  payments reduced on an hourly basis when they did not work their guaranteed hours. Given the

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

key differences in how AMN and Fastaff applied their housing guidelines, the decision granting class certification in *Clarke* does not support certification here.

Furthermore, although not addressed in Plaintiff's Motion, Fastaff anticipates that Plaintiff will argue in her reply that whether a nurse actually had his or her housing subsidy reduced is irrelevant to determining liability because the alleged injury is not any reduction itself but the exclusion of the housing allowance from the regular rate. This ignores that a necessary predicate of Plaintiff's theory of liability is that the amount of housing subsidies was "based upon, and varies with, the number of weekly hours worked." (Compl. ¶ 20). Indeed, under the very case cited by Plaintiff, the exclusion of housing allowances from the regular rate would be unlawful if, *but only if*, the maximum housing subsidy was reduced on an hourly basis. As explained above, it is undisputed that Fastaff's policy—as actually applied—did not result in hourly reductions for some nurses regardless of whether the nurses worked all of their guaranteed hours. For these individuals, there is no basis for liability under the cases supporting Plaintiff's theory of liability. And under the current policy hourly reductions are never made.

For this same reason, any argument by Plaintiff that the required individualized inquiries in this case relate only to damages is misplaced. Although a variation in the *amount* of claimed overtime due would not by itself defeat certification under Ninth Circuit law, that is not the case where (as here) individualized inquiries must be made to determine liability as to individual putative class members. In this case, putative class members who worked less than their guaranteed hours but had no reduction made (or had a daily, not hourly, reduction made) have no regular rate claim *at all*. *See supra* at 9-11. That is a liability issue, not a damages issue, and it presents a complete barrier to class certification.

Because the actual implementation of Fastaff's housing guidelines did not uniformly result in hours-based reductions, individual issues predominate as to whether any given nurse's housing subsidy could be excluded from the regular rate under Plaintiffs' theory. As such, Plaintiff cannot satisfy the commonality requirement of Rule 23(a) or the stricter predominance requirement of Rule 23(b)(3).

### 2. Plaintiff's Newly Minted, Alternative Theories Are Irrelevant and Do Not Support Certification

Perhaps recognizing the individualized inquiries inherent in their legal theory, Plaintiff's Motion pivots to a new argument that "a payment may not be excluded from the regular rate of pay pursuant to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1    § 207(e)(2) if it is generally understood as compensation for work." (Pls. MPA at 13). This argument,

2    and the cases on which Plaintiff relies in making it, has no application to this case. Even if it did,

3    determining what was "generally understood" by each and every putative class member would also

4    require an individualized inquiry.

5         Contrary to the cases that actually address housing per diems (such as *Newman*), Plaintiff's new

6    theory relies on cases arising under an inapposite exclusion from the regular rate that covers "other

7    similar payments to an employee which are not made as compensation for his hours of employment."

8    29 U.S.C. § 207(e)(2). For example, *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016)

9    involved cash payments provided to employees who elected not to take medical benefits. *Id.* at 900.

10   The character of those payments does not remotely resemble the housing reimbursements at issue here.

11   Critically, the issue of housing reimbursements is expressly covered elsewhere in the regulation, making

12   the "other similar payments" provision irrelevant. *Flores* made clear that it was limiting its analysis to

13   circumstances where the "other similar payments" clause of § 207(e)(2) is implicated and that its

14   "compensation for work" test does *not* apply where, as here, payments constitute (or arguably

15   constitute) "reimbursements for expenses" specifically addressed in the regulation. *Id.*

16        The same is true for *Reich v. Interstate Brands Corp.*, 57 F.3d 574 (7th Cir. 1995) and *Minizza*

17   *v. Stone Container Corp. Corrugated Container Division East Plant*, 842 F.2d 1456 (3d Cir. 1988),

18   both of which analyzed only whether the payments at issue fell under the "other similar payments"

19   clause in section 207(e)(2). *Reich*, 57 F.3d at 577-79; *Minizza*, 842 F.2d at 1458, 1461-62.

20   Furthermore, Plaintiff's Motion wrongly cites to 29 C.F.R. § 778.224, which covers "other similar

21   payments," rather than 29 C.F.R. § 778.217, which covers "reimbursement for expenses" and is the

22   applicable regulation in this case. (Pls. MPA at 13). In short, the authorities Plaintiff cites for her

23   alternative theory do not even address the issue here: under what circumstances housing subsidies

24   provided to travel nurses as reimbursement for expenses incurred in furtherance of their employer's

25   interests may be excluded from the regular rate.

26        Plaintiff also attempts to analogize Fastaff's housing subsidies to "attendance bonuses" and

27   "bonuses which are announced to employees to induce them to work more steadily." (Pls. MPA at 14).

28   This argument also has no relevance to their regular rate claim. Plaintiff again cites to an inapplicable

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1  regulation, 29 C.F.R. § 778.211, that has nothing to do with housing subsidy payments or expense

2  reimbursements but instead addresses "Discretionary Bonuses."  Fastaff's housing subsidies are not

3  bonuses, and Plaintiffs' complaint does not even allege that they are.  The subsidies are payments

4  calculated to cover one week of housing expenses based on Fastaff's review of housing costs in the area

5  where a nurse accepted an assignment.  As such, the evidence does not support Plaintiff's new

6  contention that "the purpose of tying the housing benefit to hours worked was to ensure

7  'accountability,'" and they cannot rely on a witness's speculation to conjure up such a link.  (*See supra*

8  at 7 n.5).  In any event, a vague desire to "ensure accountability" does not turn a payment clearly

9  designed to reimburse housing expenses into an attendance bonus.

10      **C.      Plaintiff Cannot Satisfy the Manageability and Superiority Requirements of
                 Rule 23(b)(3)**

11
        Class certification should also be denied because Plaintiff has not demonstrated that proceeding

12  on a classwide basis would be manageable or that certifying a class action would be superior to other

13  methods for resolving Plaintiff's state law claims.

14
        As an initial point, the individualized inquiries necessary to evaluate whether the value of any

15  given nurse's housing subsidy must be included in the regular rate under Plaintiff's theory would make

16  class proceedings unmanageable.  As explained above, Plaintiff's exclusive reliance on the prior version

17  of the AAL does not establish liability under her theory because it does not prove on a classwide basis

18  that each nurse's housing subsidy was based upon, and varied with, hours worked.  As such, Plaintiff

19  has not offered any viable method for answering her theory's central liability question without

20  examining individualized evidence concerning thousands of individuals.  This impediment presents a

21  standalone barrier to class certification.  *See Vasquez v. First Student, Inc.*, No. 2:14-CV-06760-ODW

22  EX, 2015 WL 1125643, at *9 (C.D. Cal. Mar. 12, 2015) (finding manageability was not met where

23  "Plaintiff has not proffered a viable class-wide method of showing whether any rest break policy was

24  actually implemented" and thus whether California law was actually violated) (citing *Ordonez v. Radio

25  Shack, Inc.*, No. 2:10-cv-07060-AS, 2014 WL 4180958, at *6 (C.D. Cal. Aug. 15, 2014).

26      In addition to Plaintiff's failure to satisfy the manageability requirement, certifying a class here

27  would not be "superior to other available methods for fairly and efficiently adjudicating" Plaintiff's

28

1    claims.  As the Court is aware, there is another lawsuit pending in California state court with a proposed

2    class-wide settlement that, if approved, would almost completely resolve the claims that Plaintiff seeks

3    to certify in this case.  As explained in Defendants' concurrently-filed Motion to Stay, Fastaff and the

4    plaintiff in *Andrea Moppin v. Fastaff, LLC; U.S. Nursing Corporation*, Case No. 2020283 (Stanislaus

5    County Superior Court), have reached a proposed settlement overtime claims under Cal. Lab. Code §

6    510, including class claims based on the allegation that Fastaff failed to pay nurses the correct regular

7    rate under California law; waiting time penalty claims under Cal. Lab. Code § 203; and claims alleging

8    a violation of the unfair competition law, Bus. and Prof. Code §§ 17200, *et seq.*  The *Moppin* plaintiff

9    filed a motion for preliminary approval of the settlement on January 17, 2018.  As stated in the motion

10   to stay, the proposed Settlement Class largely overlaps with the putative class in this case because it

11   consists of "all persons who are or were employed by either Fastaff, LLC or U.S. Nursing Corporation

12   as hourly paid, non-exempt nurses on one or more assignments at health care facilities in California at

13   any time between July 1, 2013 and the Preliminary Approval Date."

14          Because the state court may finally resolve Plaintiff's class claims, certifying Plaintiff's claims

15   in this lawsuit is not a superior method to the proposed settlement in *Moppin*.  *See Kamm v. Cal. City

16   Development Co.*, 509 F.2d 205, 210-12 (9th Cir. 1975) (holding that class action pending in federal

17   court was not superior method to resolve claims in light of settlement in parallel state court action).

### D.   <u>Dalchau's Alleged Injury Is Not Typical for the Entire Class She Seeks to Represent</u>

19          Dalchau's  alleged injury is not typical of the entire class she seeks to represent.  As explained

20   above, Fastaff normally offers nurses two housing options while they are on assignment: (1) company-

21   provided housing where Fastaff selects and pays for housing; or (2) a weekly subsidy calculated to

22   reimburse a nurse for the cost of housing in the geographic area of the assignment.  *See supra* at 4.

23   Unlike nurses who chose to receive housing subsidies (which are paid as part of weekly paychecks),

24   nurses who elected housing provided by Fastaff did not receive any payment at all for housing.  As

25   such, nurses who received no payment would never have a maximum housing per diem reduced on an

26   hourly basis.  Here, Dalchau seeks to represent putative class members regardless of whether they chose

27   to receive company-provided housing or a housing subsidy, but she personally received only a housing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

19

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

subsidy.  (Dalchau Dep. at 38:12-18).  As such, her alleged injury is not typical of the alleged injuries of putative class members who selected company-provided housing.  This lack of typicality requires denial of Dalchau's request to certify an overly-broad class for which her claims are not uniformly typical.  *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-05064-JSC, 2015 WL 9480475, at *9 (N.D. Cal. Dec. 23, 2015) (denying certification where plaintiff's alleged injury was atypical of class).

      **E.**    <u>**Plaintiff's New Theory of Liability is at Odds with the Interests of Putative Class Members, and Makes Her An Inadequate Class Representative**</u>

The adequacy requirement contained in Fed. R. Civ. P. 23(a)(4) mandates that the representative parties will "fairly and adequately protect the interests of the class."  This can only be done if the named plaintiffs establish that they do not have conflicts of interest with other class members.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) ("There must be "an absence of antagonism between representatives and absentees," and a "sharing of interest.").  Here, an actual conflict is created by Plaintiff's new theory of liability, which is at odds with the economic interest of putative class members because, if Plaintiff's theory is accepted, Fastaff would likely be unable to continue treating housing subsidies as non-taxable expense reimbursements.  That treatment is a significant benefit to travel nurses.

To start, Plaintiff has recently taken the position that Fastaff's current practice of making adjustments to housing subsidies only in full-day increments still means that subsidies must be included in the regular rate because, they argue, "days' are nothing other than a set number of hours."  *See* Reply to Def.'s Opp'n to Pls.' Motion for Conditional Certification, Dkt. No. 39, at 8.  If Plaintiff's new theory is adopted, Fastaff would be unable to make *any* reductions to the housing subsidy without risking being required to include all subsidies in the regular rate.  This would mean, for example, that even if a travel nurse quit her assignment early, returned home, and incurred no further housing expenses, her weekly housing subsidy would still need to be paid in full to avoid any regular rate violations.  The inability to make any adjustment to the amount of the housing subsidy in such situations, however, would create serious risk to Fastaff's ability to continue offering housing subsidies as non-taxable expense reimbursements. That is because the amount of the housing subsidies would potentially no longer bear a logical relationship to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1  expenses that employees were "reasonably expected to incur."  *See Shotgun Delivery, Inc. v. US*,

2  269 F.3d 969, 973 (9th Cir. 2001) (finding expense reimbursements did not qualify as a tax-

3  exempt "accountable plan" because there was not a correlation between the amount reimbursed

4  and the expenses incurred); *see also* Treas. Reg. section 1.62-2(d)(3)(i) ("If a payor arranges to

5  pay an amount to an employee regardless of whether the employee incurs (or is reasonably

6  expected to incur) business expenses of a type described in paragraph (d)(1) or (d)(2) of this

7  section, the arrangement does not satisfy this paragraph (d) and all amounts paid under the

8  arrangement are treated as paid under a nonaccountable plan").[8]

9      In sum, Plaintiff's new theory that weekly housing subsidies can *never* be reduced if they

10  are excluded from the regular rate would risk disqualifying those subsidies as an "accountable

11  plan" because there would potentially no longer be any correlation between the housing subsidy

12  reimbursements and the expenses incurred by Fastaff's travel nurses.  And a ruling that Falstaff's'

13  method of paying housing subsidies did not qualify as an accountable plan would mean that all

14  housing subsidies paid to nurses would be taxable, thus significantly lowering the value of the

15  subsidies to nurses.

16      For this reason, Plaintiff is not an adequate class representatives because, if she were to

17  prevail on her new liability theory, the economic interests of putative class members would

18  concretely be at risk as their housing subsidies may no longer qualify as nontaxable expense

19  reimbursements if Fastaff is forced to stop making any reductions, even daily reductions to its

20  housing subsidies.[9]  *See, e.g., Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 558 (C.D. Cal. 2011)

21  (plaintiff was inadequate class representative where position on overtime conflicted with class

22  members who benefited from policy); *Ellis*, 657 F.3d at 986 (class representative former

23

24  [8] If expense payments do not satisfy "accountable plan" rule, the payments must be treated as taxable wages meaning employees must have taxes deducted from the payments and they must report the payments as taxable income.

25

26  [9] Fastaff is aware that the *Clarke* court found AMN's conflict argument—that the relief plaintiff sought would cause class members to retroactively owe the IRS taxes for any per diem amount received—to be too speculative to deny class certification.  *See Clarke*, Ex. A to Pls. MPA at 7. Fastaff is making a different argument here, based on the new liability argument Plaintiff makes that was not raised in *Clarke*.  This conflict is not speculative given the position of the IRS.

27

28

Morgan, Lewis & Bockius LLP
Attorneys At Law
Los Angeles

21

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

employees would not share an interest with current employees as to relief sought and so "will not adequately protect the interests of the classes as a whole"). [10]

**F.**     **Plaintiff's Derivative Claims Are Not Suitable for Class Certification for the Same Reasons as Her Overtime Claim and for the Additional Reason That They Require Individualized Inquiries Regarding Putative Class Members' Ability to Bring Waiting Time Penalty Claims**

The Court should deny certification of Plaintiffs' UCL (Cal. Bus. & Prof. Code § 17200) and waiting time penalty claims (Cal. Lab. Code § 203) because they are purely derivative of Plaintiff's overtime claim, which does not meet the requirements of Rule 23.  Indeed, Plaintiff concedes that these claims are "entirely derivative of" and "hinge on the same common factual and legal issues as the overtime claim."  (Pls. MPA at 15-16).  Where, as here, Plaintiff cannot establish Rule 23 requirements for her primary claims, certification of purely derivative claims must also be denied.  *See Clemens*, 2016 WL 1461944, at *8 (denying certification as to derivative claims because court denied certification as to primary claims).

The Court should also deny certification of Plaintiff's waiting time penalty claim because individualized inquiries are necessary to determine whether putative class members are even able to bring this claim.  Fastaff places nurses throughout the country, and its travel nurses reside throughout the country.  During the class period, there were 2,273 nurses who worked an assignment for Fastaff in California who were not California residents.  (*See* Declaration of Emil J. Isner ¶ 3).  For example, Dalchau is a Texas resident who worked one assignment in California.  *See supra* at 8.  Therefore, some putative class members worked assignments both in California and in other states.  In this scenario, this Court has held that a multi-factor test applies to determine whether provisions of the  California Labor Code even applies to those putative class members under extraterritoriality principles.  *See Oman*, 230 F. Supp. 3d at 992–93 (finding that when employees work for an employer in California and in other jurisdictions, the analysis to determine whether a particular Labor Code provision should apply "must focus on the particular Labor Code provision invoked, the nature of the work being performed, the amount of work being performed in California, and the residence of the plaintiff and the employer").

---

[10] Plaintiff herself does not care about this risk because, while she previously enjoyed the benefits of tax-free housing subsidies, she no longer works with Fastaff.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1    Under the test used by this Court in *Oman*, individualized inquiries would be required to apply

2  the identified factors—in particular the amount of work performed in California and the residence of the

3  putative class member—and determine whether each individual class member can even pursue Section

4  203 claims.  For example, was a nurse a California resident who worked 100% of her assignments for

5  Fastaff in California, such that Section 203 would unquestionably apply to her employment?  Was she a

6  non-California resident who worked only 10% of her Fastaff assignments in California, such that

7  Section 203 would not apply to her?  Or was there another fact pattern requiring a closer analysis?  As

8  such, individual inquiries would be required to determine potential liability as to Section 203.  This

9  provides an additional, independent reason to deny certification of Plaintiffs' Section 203 claims.  *See*

10  *Ayala*, 2016 WL 7586910, at \*4-6 (denying class certification because "it is entirely unclear whether

11  each putative Class Member has sufficient contacts with California such that application of California

12  law is appropriate" and because "Plaintiff has not provided a manageable way for the Court to perform a

13  conflict-of-law analysis for each of the 48 states that the putative Class Members reside in."); *Cruz v.*

14  *Lawson Software, Inc.*, No. CIV. 08-5900 MJD/JSM, 2010 WL 890038, at \*1, 10-11 (D. Minn. Jan. 5,

15  2010) (denying class certification in wage-and-hour class action under Minnesota law where

16  individualized conflict-of-law analyses were required for employees who travelled frequently to

17  perform temporary assignments at client sites in a variety of states).

18    **G.    If Any Class Is Certified, It Must Be Limited to the Time Before Fastaff**
19          **Changed Its Policy and Thus Eliminated any Possibility of the Necessary**
           **Condition Under Plaintiff's Liability Theory of Housing Subsidies on an**
20          **Hourly Basis.**

21    Even if the Court certifies a class action, the class period should end on May 17, 2017, when

22  Fastaff changed its practice of *potentially* reducing housing subsidies on an hourly basis.  After May 17,

23  if Fastaff made any reduction at all, it was only done on a daily basis.

24    As this Court recognized in its Order Granting Plaintiffs' Motion for Conditional Certification,

25  Fastaff changed its housing policy on or around May 17, 2017 so that reductions to a housing subsidy, if

26  any, would be made solely on the basis of full days not worked.  *See* Order dated Jan. 17, 2018 at 6,

27  Dkt. No. 42; *see also supra* at 7.  Although the Court declined to limit the collective action period to the

28  time before Fastaff changed its alleged policy (Dkt. No. 42 at 6-7), Fastaff respectfully submits that the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

23

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1    May 2017 policy change *does* eliminate any possibility of liability under the theory presented by

2    Plaintiff that finds *any* support in case law.  As such, no putative class members could even potentially

3    have a regular rate claim after May 17, 2017, and the Court should end any class period as of that date.

4         As discussed above, some courts (although none in California) have held that a housing per

5    diem must be included in the regular rate if the maximum per diem is reduced on an hourly basis.  These

6    courts also held, however, that a housing per diem does *not* need to be included in the regular rate if

7    reductions are made using a day as a measuring unit.  *No* court has held that making daily reductions

8    from a housing per diem requires that the per diem be included in the regular rate.

9         It is undisputed that Fastaff changed its practice so that any reduction to a travel nurse's housing

10   subsidy would only be made on a daily basis.  *See supra* at 7.  Fastaff also changed its policy so that

11   deductions would *never* be made from the pay of travel nurses who elect company-provided housing.

12   *See id.*  Since May 2017, Fastaff has not reduced *any* travel nurse's housing subsidy unless a nurse

13   failed to work an entire day due to unavailability and the reduction used a daily method.  (*See* Windsor

14   Decl. ¶¶ 9-10 and Exs. A & B thereto).[11]  Therefore, there is no legal authority for even potentially

15   finding liability after May 17, 2017.

16        Plaintiff has previously argued that Fastaff's use of days worked as a measuring unit for

17   adjusting housing subsidies does not fix the alleged infirmities in its policy because, in Plaintiff's words,

18   "'days' are nothing other than a set number of 'hours.'"  (*See* Reply to Defs.' Opp'n to Pls.' Mot. for

19   Conditional Certification, Dkt. No. 39, at 8).  This argument, however, is contrary to the First Circuit's

20   ruling in *Newman*—and the language in the DOL Field Operations Handbook which is the basis for

21   Plaintiff's entire theory—that it is permissible to exclude per diem payments from the regular rate if any

22   reduction to those payments uses a day as a measuring unit.  *See* 749 F.3d at 37-38.  Thus, Plaintiff's

23   newly constructed argument not only finds no legal support, it is directly contrary to the authority they

24   rely on for their original liability theory.  *See Ramirez v. United Rentals, Inc.*, No. 5:10-cv-04374, 2013

25   WL 2646648, at *6 (N.D. Cal. Jun. 12, 2013) ("Although the class certification procedure is not the

26

27   ─────────────────────
[11] Under the revised policy, Fastaff continues to make case-by-case determinations whether to
     reduce a nurse's housing stipend when he or she misses an entire day of work due to personal

28   unavailability.  (Savell Dep. at 70:17-72:14).  Thus, the same individualized barriers to class
     certification that existed before May 2017 existed afterward also.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO

1  place to test the merits of a claim, it does not follow that a court must blindly certify a class on clearly

2  meritless ground").

3      Given the above authority, the Court should at a minimum cut off the class period as of the date

4  that Fastaff changed its policy to eliminate any possibility of liability even if *Newman*—and the DOL

5  Field Operations Handbook—were extended to California's definition of the regular rate as applied to

6  housing per diems.  Contrary to Plaintiff's argument, that date is May 17, 2017, not November 2017.

7  Although Fastaff revised the formal AAL in November 2017 to reflect the policy change, the actual

8  change to the practice occurred in May 2017.  (*See* Windsor Dep. at 37:5-11, 67:5-21; Strong Dep. at

9  29:20-30:6 Windsor Decl. Ex. A (showing application of revised policy during week of May 21, 2017)).

10      Therefore, the Court must reject Plaintiff's proposed class period and instead exclude

11  individuals who did not work on a California assignment until after May 17, 2017.  At a minimum, the

12  Court must exclude individuals who only elected company-provided housing because it is undisputed

13  that Fastaff made no deductions from pay as to nurses who elected company-provided housing after the

14  policy change, no matter how many hours, or days, they worked.

**IV.  CONCLUSION**

16      For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's

17  Motion for Class Certification.

19  Dated:  February 21, 2018         MORGAN, LEWIS & BOCKIUS LLP

21      By _____/s/ John S. Battenfeld_____
    John S. Battenfeld

22      Attorneys for Defendants
23      FASTAFF, LLC, and U.S. NURSING
    CORPORATION

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

25

DEFS.' OPPOSITION TO PLS.' MOTION
FOR CLASS CERTIFICATION
Case No. 3:17-cv-01584-WHO