UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHANIE DALCHAU, et al.,

          Plaintiffs,

   v.

FASTAFF, LLC, et al.,

          Defendants.

Case No.  17-cv-01584-WHO

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION AND DENYING MOTION TO STAY**

Plaintiffs Stephanie Dalchau and Michael Goodwin filed a putative class action and a Fair Labor Standards Act ("FLSA") collective action on behalf of former and present hourly employees of defendants U.S. Nursing Co. and its subsidiary, Fastaff, LLC (collectively "Fastaff") employed pursuant to an Assignment Agreement Letter ("AAL").  They allege that, as part of an employee's compensation, Fastaff offers either a weekly housing stipend or supplies housing.  It excludes the value of this benefit from the employees' regular rate for purposes of calculating overtime, resulting in underpayment according to Dalchau.  She now moves pursuant to Rule 23 for class certification based on her California state law wage and hour claims.[1]  Fastaff opposes and seeks to stay the California state law claims in light of another action pending in state court. The balance of interests in this case weigh against issuance of a stay, and I DENY Fastaff's motion.  Dalchau satisfies the requirements for Rule 23 class certification, and I GRANT her motion for class certification.

## BACKGROUND

Fastaff provides temporary staffing of nurses and technicians (employees) at hospitals nationwide for assignments typically ranging from two to thirteen weeks.  *See* Answer ¶¶ 6-9

---

[1] Goodwin is not included in this motion because his employment with Fastaff took place outside of California.

United States District Court
Northern District of California

1   (Dkt. 13); Compendium of Evidence ISO Plaintiffs' Motion for Class Certification

2   ("Compendium"), Ex. 3, Deposition of Vice President of Administration Kimberly Windsor

3   ("Windsor Depo.") at 16:6-10 (Dkt. No. 41-5).  As a requirement for each assignment, Fastaff

4   requires employees to sign an Assignment Agreement Letter (AAL).  Windsor Depo. at 47:21-24.

5   The AAL contains the terms and conditions of their temporary employment, including Fastaff's

6   housing benefits.  *See* Compendium, Ex. 8, Assignment Agreement Letter Template (Dkt. No. 41-

7   8).  Employees normally have two options for their housing benefit: (i) Fastaff selects and directly

8   pays for housing or (ii) Fastaff pays employees a weekly subsidy as part of their weekly

9   paychecks.  It excludes the value of the housing benefit from its employees' regular rate for

10  purposes of calculating overtime.  *See* Compendium, Ex. 13, Response to Request for Admission

11  Nos. 1-4 (Dkt. No. 41-9); Ex. 4, Deposition of Payroll Manager Allison Strong ("Strong Depo.")

12  at 84:3-12 (Dkt. No. 41-6).

13          Prior to May 2017, Fastaff's housing guidelines, as set out in the AAL, required that an

14  employee must satisfy a weekly guaranteed hours requirement in order to receive the full value of

15  the housing benefit.  Compendium, Ex. 8, Assignment Agreement Letter Template.  If an

16  employee did not work the required amount of hours, then the housing subsidy was "prorated"

17  based on the "actual hours worked."  *Id.*; Windsor Depo. at 78:7-21. The proration was made

18  using an hourly rate created by dividing the maximum weekly value of the monetary stipend or in-

19  kind housing by the "guaranteed hours" over which the benefit would have been earned.  Windsor

20  Depo. at 65:12-66:21; 69:22-71:15.  For employees receiving monetary stipends, that hourly rate

21  was deducted from the maximum weekly stipend for each hour the employee fell below his or her

22  guaranteed hours.  *Id.* at 65:12-66:21.  For employees receiving in-kind housing arranged by

23  Fastaff, the hourly rate was deducted from the employees' paycheck as a charge-back for each

24  hour they fell short.  *Id.* at 69:22-71:15.

25          Fastaff would not make a reduction in the housing benefit where an employee's failure to

26  make their guaranteed hours was the result of decisions by their assignment, e.g., a hospital

27  cancelling a shift.  But where the failure to meet the guaranteed hours was the result of "personal

28  unavailability," Fastaff would make the deduction unless it determined that "exceptional" personal

2

United States District Court
Northern District of California

1  circumstances (like a family emergency) existed; then it would decide on a "case-by-case" basis

2  whether to make an exception and not make a deduction. *Id.* at 58:23-59:20, 95:1-9. Both the

3  payroll and the recruiting departments have to approve any exceptions granted. *Id.* at 62:16-22.

4      In May 2017, Fastaff changed the way it calculated the housing benefit. Compendium, Ex.

5  5, Deposition of Vice President of Recruitment, Michelle Savell at 28:4-29:2 (Dkt. No. 41-7).

6  That change was confirmed in a new AAL "effective November 16, 2017." *See id.*, Ex. 12,

7  Second AAL Template (Dkt. No. 41-9). Under the revised policy, for employees electing in-kind

8  housing, no charge backs were made for failing to satisfy the guaranteed hours. Strong Depo. at

9  39:22-40:24. Employees working locally (within 50 miles of their permanent residence) were no

10  longer eligible for any housing benefit. Windsor Depo. at 38:15-20. And for employees receiving

11  the monetary stipend, the right to receive the full stipend still depended on their working their

12  guaranteed hours; they now had to "work all of their scheduled days" and if they did not, the

13  stipend was reduced for each workday they failed to work. Strong Depo. at 37:24-39:1.

14      The complaint encompasses four theories of liability: (1) failure to pay overtime; (2)

15  violation of California Business and Professions Code § 17200, *et seq.*; (3) failure to timely pay all

16  wages due upon separation of employment; and (4) violations of the Fair Labor Standards Act.

17  Complaint (Dkt. No. 1). All of these claims hinge on plaintiffs' theory that Fastaff should have

18  included the value of the housing benefit in the regular rate of pay for purposes of calculating

19  overtime. I have previously conditionally certified Dalchau's federal FLSA claim, concluding that

20  plaintiffs adequately alleged a common policy or plan and that they are similarly situated to the

21  putative class members. [2]

22      Dalchau worked for Fastaff in California for two assignments. Declaration of Russell R.

23  Bruch ISO Defendant's Opposition to Plaintiff's Motion for Conditional Certification ("Bruch

24  Decl."), Ex. A, Deposition of Stephanie Dalchau ("Dalchau Depo.") at 34:24-35:6. She now seeks

25  _____

26  [2] The FLSA class conditionally certified was: "All individuals who, at any time within three years

27  prior to the date of conditional certification, worked an assignment pursuant to an Assignment Agreement Letter with Fastaff, LLC, during which they received a housing stipend or in-kind housing, worked in excess of 40 hours in one or more workweeks, and had the value of their

28  housing benefit excluded from their regular rate for purposes of calculating overtime."

to certify the following class:

> All individuals, except for those who worked exclusively on or after November 16, 2017 and received in-kind housing, who, at any time from March 25, 2013 through the date of certification, worked in California pursuant to an Assignment Agreement Letter with Fastaff during which they received a housing stipend or in-kind housing, received overtime pay, and had the value of the housing benefit excluded from their regular rate for purposes of calculating overtime pay.

Motion for Class Certification ("Mot.") at 9 (Dkt. No. 41-1).

Relevant both to Fastaff's motion to stay and its opposition to Dalchau's class certification motion is a case pending in the Superior Court of the State of California, Stanislaus County, *Moppin v. Fastaff, et al.*, Case No. 2020283. Plaintiff Andrea Moppin filed her complaint against Fastaff on May 24, 2016, alleging a single cause of action for violation of the Private Attorneys General Act of 2004, Labor Code §§ 2698, et *seq.* ("PAGA") based on failure to: provide all meal periods and paid rest breaks, pay overtime for all hours worked or on standby, use the appropriate regular rate in calculating overtime, and timely furnish correct and accurate itemized wage statements. *Moppin* Complaint (Dkt. No. 50-1).[3] On May 12, 2017, two months after this case was filed, Fastaff's counsel in this action also became counsel in the *Moppin* proceedings.

In August, 2017, the parties in *Moppin* mediated the case, and after mediation-related negotiations reached agreement. On January 10, 2018, as a condition of a settlement, Moppin filed a vastly expanded First Amended Complaint ("FAC"). It adds class claims under California wage and hour laws on behalf of a putative class of "all persons who are or were employed by [Fastaff] as hourly paid, non-exempt employees on one or more assignments at health care facilities in California at any time between July 1, 2013 and the present" and a FLSA collective action claim on behalf of "all persons who are or were employed by [Fastaff] as hourly paid, non-exempt employees on one or more assignments at health care facilities in California at any time between July 1, 2014" and the present. *See Moppin* FAC (Dkt. No. 50-2). The *Moppin* FAC includes private class claims under the California wage and hour laws that matched her PAGA

---

[3] Moppin alleged that Fastaff failed to pay the correct rate for overtime because it failed to account for all "per diem" and "travel reimbursement" pay and all "guarantees." Moppin Complaint ¶ 5f.

United States District Court
Northern District of California

United States District Court
Northern District of California

claims (*e.g.,* failure to provide breaks, failure to pay all overtime, failure to properly calculate overtime, failure to provide accurate wage statements, and waiting time penalties) but also added an Unfair Competition Law claim (Cal. Bus. & Prof. Code § 17200) and a FLSA collective action claim.

On January 17, 2018, the parties in *Moppin* submitted a proposed settlement of the class, PAGA, and FLSA claims to the state court for preliminary approval.  Under the proposed settlement, all of the proposed class members' would release California and federal wage and hour claims, likely including those in this case.  The next day, defense counsel filed Notice of Pendency of Other Action or Proceeding in this case, informing the plaintiffs and me about the existence of the *Moppin* proceedings.  Dkt. No. 44.

On January 23, 2018, Dalchau moved ex parte in *Moppin* to intervene in the proceedings, notifying the state court of this case and requesting continuation of the hearing on the motion for preliminary approval.  *See* Ex Parte Application (Dkt. No. 46-1).  The court granted the ex parte application in its entirety and continued the hearing on the motion for preliminary approval until April 12, 2018, to allow me to rule on Dalchau's motion for class certification.  *See* Order on Ex Parte Application.  Dkt. No. 46-2.

## I.      MOTION TO STAY

Fastaff seeks a temporary stay of Dalchau's state law claims under *Landis v. North Am. Co.*, 299 U.S. 248 (1936), in light of the settlement reached  in *Moppin* which, if approved, will largely if not wholly resolve Dalchau's state law claims in this case.  Fastaff argues that the temporary stay is warranted because: (i) approval of the *Moppin* settlement would largely moot Dalchau's certification motion; (ii) denial of the stay "will cause this Court and the parties to unnecessarily expend time and resources on issues that the *Moppin* settlement may narrow or render moot"; and (iii) Dalchau will suffer no harm from a temporary stay of her state law class claims.  I do not agree that a stay is warranted in this case.[4]

---

[4] Dalchau argues that Fastaff's motion for a stay should be denied pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Because I conclude that Fastaff's motion should be denied under the *Landis* standard, I do not address the more narrow and demanding *Colorado River* doctrine.  *Compare id.* (holding that *in exceptional circumstances*

A district court has discretionary power to stay proceedings in its own court under *Landis*. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). The Ninth Circuit has set out the following framework for evaluating whether a *Landis* stay is proper:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* at 1110.

When weighing the relevant interests, the court must be mindful that "if there is even a fair possibility that the stay for which he prays will work damage to someone else," the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. "Only in rare circumstances will a litigant in one cause be compelled to step aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* Moreover, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112.

The *Moppin* settlement and the way in which it came about plausibly reflect an attempt on the part of Fastaff to undercut Dalchau in the instant action. Nothing in the record indicates that Moppin has vigorously litigated the classwide claims in the course of the state court proceedings. Indeed, circumstances suggest that Moppin's addition of classwide causes of action occurred at the behest of Fastaff to escape potential liability here. The timing of the settlement and conduct of the *Moppin* parties are enough to indicate "a fair possibility that the stay . . . will work to damage [Dalchau]." *See Landis*, 299 U.S. at 255. In light of that, Fastaff must demonstrate a clear case of hardship or inequity in being required to go forward.

Fastaff argues that denying a stay will cause this court and the parties hardship due to the unnecessarily expended time and resources on issues that the *Moppin* settlement may narrow or

---

a district court may dismiss a federal action in light of parallel state court proceedings based on concerns regarding judicial economy), *with Lockyer*, 398 F.3d at 1109 (noting that a *Landis* stay is within the court's discretionary powers).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    render moot.  Motion to Stay at 8 (Dkt. No. 49).  Fastaff relies on several cases to support its

2    argument.  *See, e.g.*, *Advanced Internet Technologies, Inc. v. Google, Inc.*, No. C-05-02579 RMW,

3    2006 WL 889477, at *2 (N.D. Cal 2006) (staying action in order to conserve judicial resources);

4    *see also, e.g.*, *Albert v. Blue Diamond*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017) (same); *Hurrle*

5    *v. Real Time Resolutions, Inc.*, 2016 WL 4575740, at *2 (W.D. Wash. 2016) (same).  These cases

6    do not support granting Fastaff's motion for a stay; their factual circumstances are substantially

7    different.

8         In *Advanced Internet Technologies*, the plaintiffs in the state action filed a second amended

9    complaint containing the relevant causes of action months before the federal action commenced.

10   2006 WL 889477, at *1.  After filing their case, the federal plaintiffs attempted to intervene in the

11   state court proceedings in an untimely manner.  *Id.* at *2.  Defendants in the federal action moved

12   to stay, and the district court found that the federal plaintiffs had provided "no compelling reason"

13   for the court to deny a stay given that the settlement in the state court would have a preclusive

14   effect on the relevant claims and that the federal plaintiffs had failed to seek timely intervention in

15   the precursor state action.  *Id.*  This case is obviously different.  The *Moppin* FAC was not filed

16   until over a year after this action commenced.  Upon learning of the potential settlement

17   agreement, Dalchau sought to intervene in the state proceedings in a timely manner and her

18   motion to intervene was granted.  *Advanced Internet Technologies* is, therefore, unhelpful to

19   Fastaff.

20        *Albert* and *Hurrle* are also inapposite.  In *Albert*, consumers brought a class action against

21   defendant Blue Diamond, alleging misrepresentation in product labeling and asserting three causes

22   of action: (1) violation of New York General Business Law Section 349; (2) violation of

23   California Business and Professions Code Section 17200; and (3) unjust enrichment.  232 F. Supp.

24   3d at 510.  *Albert* was one of several cases, filed within a month of each other, brought against

25   Blue Diamond based on its product labeling.  *Id.* at 511.  After Blue Diamond reached a

26   nationwide class settlement with plaintiffs from four other lawsuits, the settlement was

27   preliminarily approved, and Blue Diamond filed for a motion to stay the *Albert* action.  *Id.*  In

28   granting Blue Diamond's motion, the court noted, "[p]roceeding with this case while a potential

nationwide settlement that encompasses Plaintiffs' claims is pending would cause the parties to expend considerable resources conducting discovery and briefing motions that may be unnecessary." *Id.* at 513.  Here, significant class certification discovery has occurred and the briefing on that motion is complete.  *Albert* is also unhelpful to Fastaff's position.

Hurrle is perhaps the least helpful to Fastaff.  Hurrle filed a class action lawsuit against Real Time Resolutions, Inc. ("Real Time") for alleged violation of the Telephone Consumer Protection Act on August 20, 2013.  *Hurrle*, 2016 WL 4575740, at *1.  The court initially stayed the action pending the outcome of petitions to the Federal Communications Commission.  *Id.* During the initial stay, another plaintiff, Michelle Tannlund, also filed a similar class action against Real Time.  *See Tannlund v. Real Time Resolutions, Inc.*, No. 14-cv-5149 (filed July 7, 2014).  Real Time then informed the *Hurrle* court that it had reached a settlement with Tannlund. *Hurrle*, 2016 WL 4575740, at *1.  The court subsequently lifted the initial stay in *Hurrle*, and did not foreclose entering another stay.  *Id.*  In both cases, a number of motions were filed, including a second motion to stay by Real Time in *Hurrle*.  *Id.*  At the time the *Hurrle* court considered Real Time's second motion to stay, there were several other pending motions in the case: a motion for summary judgment, a motion to strike Hurrle's class allegations, and a motion for class certification.  *Id.*  There were also two pending motions before the *Tannlund* court: Tannlund's unopposed motion for preliminary approval and a motion by Hurrle to intervene and dismiss or transfer the *Tannlund* case.  *Id.*  With this procedural background, the *Hurrle* court granted Real Time's motion to stay.  *Id.* at *2.  The court found that the competing interests weighed in Real Time's favor and that a stay would further the orderly course of justice.  Further, the effect of the pending *Tannlund* motions, especially Hurrle's motion, could affect the case in an unclear manner and extent.  *Id.*  The court also held that granting the stay would not prejudice Hurrle.

The procedural posture of this case differs from that of *Hurrle*.  Here, Fastaff seeks to stay an action filed over a year before the Moppin settlement-FAC was filed.  This case has been vigorously litigated, the parties have conducted significant class-based discovery, and I have already conditionally certified Dalchau's FLSA claim.  In those respects, this action is "further along" and more developed than *Moppin*.  In contrast, the *Tannlund* proceedings were further

1   along than *Hurrle*, a fact that contributed to the court's decision to grant Real Time's stay.  The

2   competing interests in this case differ from those in *Hurrle*.

3         In addition to the status of this litigation, which I just described, the *Moppin* court

4   continued the hearing date on the motion for preliminary approval in apparent anticipation of my

5   decision concerning Dalchau's motion for class certification.  Fastaff essentially points to nothing

6   other than defense of this suit to demonstrate a hardship or inequity.  And that "prejudice" is

7   wholly insufficient.  *See Lockyer*, 398 F.3d at 1112 (noting that requiring defense of suit is not

8   clear case of hardship or inequity).  These circumstances support denial of a *Landis* stay at this

9   time.

10        Fastaff's motion to stay is DENIED.  I do not offer any view concerning the merits of the

11   *Moppin* settlement.  But in light of the posture of this case, Fastaff has provided no basis to grant

12   the motion to stay.

13   **II.      MOTION FOR CLASS CERTIFICATION**

14        **A.      Legal Standard**

15        "Before certifying a class, the trial court must conduct a rigorous analysis to determine

16   whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v. Am. Honda*

17   *Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).  The burden

18   is on the party seeking certification to show, by a preponderance of the evidence, that the

19   prerequisites have been met.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550-51 (2011);

20   *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011).

21        Certification under Rule 23 is a two-step process.  The party seeking certification must first

22   satisfy the four threshold requirements of Rule 23(a): numerosity, commonality, typicality, and

23   adequacy.  Specifically, Rule 23(a) requires a showing that:

24             (1) the class is so numerous that joinder of all members is
             impracticable;
25             (2) there are questions of law or fact common to the class;
             (3) the claims or defenses of the representative parties are typical of
26             the claims or defenses of the class; and
             (4) the representative parties will fairly and adequately protect the
27             interests of the class.

28   Fed. R. Civ. P. 23(a).

United States District Court
Northern District of California

9

1    The party seeking certification must then establish that one or more of the grounds for

2  maintaining the suit as a class action are met under Rule 23(b).  Here, Dalchau seeks certification

3  under Rule 23(b)(3), requiring a plaintiff to establish "that the questions of law or fact common to

4  class members predominate over any questions affecting only individual members, and that a class

5  action is superior to other available methods for fairly and efficiently adjudicating the

6  controversy."  Fed. R. Civ. P. 23(b)(3).

7    **B.    Rule 23(a) Requirements**

8      **1.    Numerosity**

9    Rule 23(a)(1) requires that the "the class is so numerous that joinder of all members is

10  impracticable."  Fed. R. Civ. P. 23(a)(1).  The party seeking certification "do[es] not need to state

11  the exact number of potential class members, nor is a specific number of class members required

12  for numerosity."  *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

13  However, courts generally find that numerosity is satisfied if the class includes forty or more

14  members.  *See Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014); *In re

15  Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).

16    Here, during the relevant period, Fastaff has employed over 5,000 employees in California

17  under AALs.  Compendium, Ex. 14, Requests for Interrogatories Nos. 11-12 (Dkt. No. 41-10).

18  Dalchau also points out that joinder is impracticable because the traveling nature of putative class

19  members' work means that the proposed class contains members that are geographically diverse.

20  Fastaff does not dispute that the proposed classes satisfy the numerosity requirement.  Dalchau has

21  satisfied numerosity.

22      **2.    Commonality**

23    Commonality demands that there be "questions of law or fact common to the class."  Fed.

24  R. Civ. P. 23(a)(2).  To satisfy this requirement, the common question "must be of such a nature

25  that it is capable of class-wide resolution – which means that determination of its truth or falsity

26  will resolve an issue that is central to the validity of each of the claims in one stroke."  *Wal-Mart

27  Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  For purposes of Rule 23(a)(2), "even a single

28  common question will do."  *Id*. at 359 (internal modifications omitted).

United States District Court
Northern District of California

### a.    Overtime Claim

Fastaff argues that because the actual implementation of its housing benefit policy does not uniformly result in hours-based reductions to the housing benefit, Dalchau cannot establish commonality.  Defendants' Opposition to Plaintiff's Motion for Class Certification ("Oppo.") at 16 (Dkt. No. 51).  Fastaff, as noted above, approves exceptions for its policy to reduce the amount of housing benefit provided when employees do not meet their minimum "guaranteed" work requirement. This case-by-case analysis, according to Fastaff, defeats commonality because whether or not a particular employee received the housing benefit is not common across the proposed class.

Fastaff's argument is unpersuasive.  The commonality requirement does not require that class members suffer identical harm.  Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  All Fastaff employees who are eligible to receive housing benefits are subject to the same policy of having the value of housing benefits excluded from the regular rate used to calculate overtime. Therefore, there exists at least one common question – whether Fastaff's policy of excluding the value of the housing benefits from the regular rate properly compensates class members pursuant to California law.

Fastaff insists that its policy of excluding the value of the housing benefits from the regular rate raises a common question only if all putative class members had their housing subsidies reduced if they failed to work their guaranteed hours.  Fastaff claims that, because Dalchau's "common evidence" does not definitively demonstrate that this is the case and also ignores evidence establishing that some employees received their maximum housing allowance despite not having met their minimum guaranteed hours, Dalchau cannot satisfy the commonality requirement.  Oppo. at 14.  But Fastaff's argument ignores that Dalchau's theory of liability does not revolve around whether employees receive the full amount of their benefits, but instead on how that benefit was uniformly calculated.

Dalchau points out that the right to the full value of the housing benefit is contingent on the

11

1   amount of time worked by an employee, not on how much in housing expenses the employees

2   actually incurred.  According to Dalchau, under California law the value of the housing benefit

3   must therefore be included in the regular rate used to calculate overtime payments.

4         Fastaff's evidence that the housing benefit is sometimes not reduced as a result of a case-

5   by-case determination to make an exception does not undermine Dalchau's showing that the

6   amount of the housing benefit is tied directly to the amount of time worked under Fastaff's

7   policy.  Fastaff admits that on the occasions that an exception is allowed, it is only allowed when

8   the employees provide a sufficient justification for their inability to work.  But these

9   individualized situations, as described by Fastaff, do not defeat commonality.  There still exists at

10  least one common question – whether Fastaff's policy of excluding the value of the housing

11  benefits from the regular rate properly compensates class members pursuant to California law.

12        Fastaff also attempts to overcome commonality by arguing that Dalchau's theory of

13  liability incorrectly focuses on regulations and definitions that it considers irrelevant to the

14  liability inquiry.  But "Rule 23 grants courts no license to engage in free-ranging merits inquiries

15  at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455,

16  466 (2013).  "Merits questions may be considered to the extent – but only to the extent – that they

17  are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."

18  *Id.*

19        Fastaff's merit-based argument cannot defeat class certification.  When the alleged concern

20  about a proposed class is that it exhibits not some "fatal dissimilarity but rather, a fatal similarity"

21  as to an element of plaintiffs' cause of action, the question is properly engaged with on summary

22  judgment, not class certification.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016)

23  ("When, as here, the concern about the proposed class is not that it exhibits some fatal

24  dissimilarity but, rather, a fatal similarity – [an alleged] failure of proof as to an element of the

25  plaintiffs' cause of action – courts should engage that question as a matter of summary judgment,

26  not class certification.") (internal quotation marks omitted).  Whether or not the regulations and

27  definitions that Dalchau points to in establishing her theory of liability actually impose liability is

28  an argument that would be relevant to all potential class members.  I need not decide now the

United States District Court
Northern District of California

12

1    ultimate question of whether Fastaff's overtime policy is lawful or unlawful in order to certify the

2    class. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 n.5 (9th Cir. 2014) (Merits-based

3    arguments are "appropriately made at trial or at the summary judgment stage.").

4                          **b.      Derivative State Claims**

5            Based upon Fastaff's alleged failure to properly pay overtime, Dalchau also asserts

6    derivative state law claims for unlawful business practices and waiting time penalties.  Fastaff

7    argues that a class based on these derivative claims would also not be able to establish

8    commonality for the same reasons described above.  Specifically regarding the waiting time claim,

9    it asserts that the existence of individualized questions regarding whether class members who are

10   not California residents can pursue claims under Section 203 of the California Labor Code

11   forecloses a finding of commonality.  Oppo. at 22-23.  Having already considered Fastaff's

12   general objections above, I only address its more specific argument against the waiting time

13   penalties.

14           Dalchau's waiting time claim is based on Fastaff's alleged violation of California Labor

15   Code section 203.  Under Section 203, if an employer willfully fails to pay wages to a

16   "discharged" employee in accordance with Section 201 of the California Labor Code, which

17   provides that wages earned and unpaid at the time of discharge are due and payable immediately,

18   the employer is subject to penalties.  Dalchau asserts that by intentionally adopting the uniform

19   policy of excluding the value of housing benefits from the regular rate despite tying the right to

20   receive these benefits to satisfying minimum work requirements, Fastaff willfully failed to pay

21   employees all wages owed by the conclusion of their employment.  Mot. at 15-16.

22            Relying on my decision in *Oman v. Delta Air Lines, Inc.*, 230 F. Supp. 3d 986, 992-93

23   (N.D. Cal 2017), Fastaff contends that because there were 2,273 non-resident employees who

24   worked an assignment for Fastaff in California during the class period, individualized inquiries

25   would be required to determine whether these class members can pursue Section 203 claims.

26   Fastaff's reliance on *Oman* is misplaced.  In *Oman*, the issue was whether Section 226 of the

27   California Labor Code could protect plaintiffs who worked a de minimis amount of time in

28   California.  *Id.* at 992.  I found that "to determine whether a particular California Labor Code

United States District Court
Northern District of California

13

provision should apply in a situation where work was performed in California *and* in other jurisdictions, the appropriate analysis must focus on the particular Labor Code provision invoked, the nature of the work being performed, the amount of work being performed in California, and the residence of the plaintiff and the employer." *Id.* at 992-93 (emphasis in original).

Unlike in *Oman*, the claims for the employees in the proposed class here are based on work performed exclusively in California for assignments ranging from two to thirteen weeks. Under California law, each assignment for which an employee is hired is a distinct employment period for purposes of applying the protection of Section 203. *See Smith v. Superior Court*, 39 Cal. 4th 77, 90 (2006) ("[W]e conclude that an employer effectuates a discharge within the contemplation of sections 201 and 203 . . . when it releases an employee upon the employee's completion of the particular job assignment or time duration for which he or she was hired"). Because class members worked exclusively in California, *Oman* is inapposite, and the waiting time claim does not necessitate any individual inquiry concerning members' ability to bring a claim. Dalchau likewise satisfies the commonality requirement for the derivative state claims.

### 3.   Typicality and Adequacy

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) assures that the interests of the named representatives align with the interests of the rest of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

Similarly, to establish adequacy under Rule 23(a)(4), named plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two

United States District Court
Northern District of California

questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted).

Fastaff asserts that Dalchau's alleged injury is not typical of the entire class she seeks to represent because Dalchau chose to receive a cash subsidy, whereas employees who elected to stay in housing provided by Fastaff did not receive any cash payment. In Fastaff's view, employees who elected to stay in Fastaff-provided housing rather than take a stipend would never have their "housing benefit" reduced even if they did not work the required hours; accordingly, Dalchau's injury is not typical of the alleged injuries of *those* putative class members. Oppo. at 19-20. This argument ignores that Dalchau's injury under her theory of liability is not the reduction in amount of the housing subsidy paid to class members who did not meet their minimum hours. Instead, Dalchau's injury is the exclusion of the value of the housing benefit from the regular rate, resulting in overtime underpayment. This is an injury shared by all prospective class members, no matter which housing benefit option they selected. Dalchau's injury is based on conduct that is not unique to Dalchau (Fastaff's exclusion of the value of the housing benefit from the regular rate). It is typical of the proposed class.

Concerning Dalchau's adequacy as a named plaintiff, Fastaff argues that Dalchau's theory of liability could plausibly result in its inability to reduce the housing benefit based on the amount of time worked and lead to the classification of its method of paying housing subsidies as taxable rather than non-taxable, effectively lowering the values of subsidies for employees it hires. Fastaff believes that this potential outcome would cause economic harm to putative class members and demonstrates that Dalchau will not adequately protect the class members' interests. But this theory of inadequacy is based on Fastaff's erroneous view of Dalchau's theory of liability. Dalchau does not assert that the amount of the housing benefits can never be decreased. Instead, she argues that, where the amount of the housing benefits is conditioned on time worked, it is considered "compensation" under California law and its value cannot be excluded from determining the employees' regular rate of pay for purposes of determining overtime

United States District Court
Northern District of California

1   compensation.  Further, as Dalchau correctly points out, a finding that Fastaff's housing benefit

2   must be included in the regular rate would not necessarily preclude the benefit from remaining

3   tax-exempt because FLSA and the IRS treat per diems based on time worked differently.  *See*

4   *Clarke et al. v. AMN Services, LLC*, No. CV 16-4132, at 4 (C.D. Cal. October 12, 2017) (noting

5   also that pier diems can satisfy the IRS tax-exempt requirements and be included in the regular

6   rate for purposes of FLSA).

7        Fastaff's arguments reveal no conflicts on the part of Dalchau or her counsel and do not

8   suggest that Dalchau will not "prosecute the action vigorously on behalf of the class," which is the

9   relevant inquiry for the adequacy requirement.  The record suggests that neither class counsel nor

10  Dalchau has any actual conflicts with other class members.  *See* Declaration of Matthew B. Hayes

11  ("Hayes Decl.") ¶ 25 (Dkt. No. 41-4); Declaration of Stephanie Dalchau ("Dalchau Decl.") ¶ 11

12  (Dkt. No. 41-4).  In addition, both class counsel and Dalchau have thus far prosecuted this action

13  vigorously on behalf of the class and express their intent to continue to do so.  *See* Hayes Decl. ¶¶

14  6-11, 21-24; Dalchau Decl. ¶¶ 8-12.  Dalchau meets the adequacy requirement.

15       **C.      RULE 23(b)(3) REQUIREMENTS**

16              **1.      Predominance**

17       Predominance under Rule 23(b)(3) asks "whether proposed classes are sufficiently

18  cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S.

19  591, 623 (1997).  This analysis focuses on the relationship between common and individual issues.

20  *Hanlon*, 150 F.3d at 1022.  To satisfy this subsection, common questions must predominate over

21  any questions affecting only individual members.  *Id*.

22       Fastaff's predominance argument mirrors its commonality argument: "because the actual

23  implementation of Fastaff's housing guidelines did not uniformly result in hours-based reductions,

24  individual issues predominate as to whether any given employee's housing subsidy could be

25  excluded from the regular rate under [Dalchau's] theory."  Oppo. at 16.  As discussed above,

26  Fastaff's argument ignores that Dalchau's theory of liability does not turn on whether employees

27  receive the full amount of housing benefits possible.  Dalchau instead argues that the "common

28  evidence" demonstrates that the right to the housing benefits is based on the amount of time

16

worked by an employee; because the value of the housing benefit is tied to hours or (after May 2017) days worked, it must be considered compensation and its value included in the regular rate. For class certification purposes, Dalchau has sufficiently demonstrated that the question of whether Fastaff's policy of excluding the value of the housing benefits from the regular rate properly compensates class members pursuant to California law predominates over any individual questions.

### 2.      Superiority

Certification under Rule 23(b)(3) requires a showing that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors relevant to this determination include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*. "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks omitted).

Dalchau asserts that because "liability for each claim hinges upon the common questions of (1) whether [Fastaff] adopted a policy of excluding the housing benefit from the 'regular rate' when calculating overtime, despite tying the right to receive this benefit to satisfying minimum weekly work requirements, and (2) whether this policy violates California law," determining the legality of Fastaff's housing benefit policies and practices in a single proceeding "will reduce litigation costs and promote greater efficiency." Mot. at 18 (citing *Provine v. Office Depot, Inc*., 2012 U.S. Dist. LEXIS 93881, at *33-34 (N.D. Cal. 2012) (holding "that a class action is superior to any other method of adjudication" because "[a]ll of the prospective class claims revolve around a question of law common to all prospective members")).

Fastaff responds that individualized inquiries are necessary to evaluate whether the value

1    of any given employee's housing subsidy must be included in the regular rate under Dalchau's

2    theory and that makes proceeding as a class unmanageable.  This argument again misstates

3    Dalchau's theory of liability.  The question to be answered is not whether Fastaff decreases

4    housing benefits based on the number of hours worked every time an employee fails to work the

5    required amount of time.  The question Dalchau raises is whether Fastaff's policy of excluding the

6    housing benefit from the regular rate properly compensates class members pursuant to California

7    law.  The individualized inquiries that Fastaff suggests are not necessary to answer this question

8    and do not defeat superiority.

9         Fastaff also contends this instant case is not superior because, as noted above, there is a

10   pending lawsuit in the Superior Court of the State of California, Stanislaus County, *Moppin v.*

11   *Fastaff, et al*., Case No. 2020283.  The parties in *Moppin* recently reached a settlement that would

12   likely encompass many, if not all, of Dalchau's claims.  Fastaff argues that this settlement renders

13   this action inferior.  But because no class has been certified in *Moppin*, and may not be, this case

14   is the only current method for class members to adjudicate their claims. *See Abraham v. WPX*

15   *Production Productions, LLC*, 317 F.R.D. 169, 277 (D. N.M 2016) (holding that a pre-

16   certification class action does not defeat the superiority of a putative class action).

17        I have additional concerns about the superiority of *Moppin,* given the circumstances.  Of

18   course, it is possible that the proposed settlement in *Moppin* is fair to the class.  But as far as the

19   record here reflects, Moppin has not litigated her case on a classwide basis and has not conducted

20   any formal classwide discovery.  The timing of filing the vastly expanded FAC suggests that she

21   agreed to convert her single cause of action case solely as a condition of settlement.  And I take a

22   dim view of Fastaff's counsels' failure to inform plaintiffs' counsel in this case and this court

23   about the existence of state proceedings until the day after I issued my order conditionally

24   certifying a nationwide FLSA collective and six days *after* Dalchau filed her motion for class

25   certification.  None of this supports Fastaff's superiority argument.

26        I have already found that the prospective class claims revolve around a common question

27   of law—whether Fastaff's exclusion of the housing benefit's value adequately compensates the

28   travelling employees under California law.  Given that the resolution of potential class claims will

United States District Court
Northern District of California

United States District Court
Northern District of California

1    revolve around this single question, I find that a class action in this case is superior to any other

2    method of adjudication.  *See Provine v. Office Depot, Inc.*, No. C 11-00903 SI, 2012 U.S. Dist.

3    LEXIS 93881, at *33-34 (N.D. Cal. 2012) (finding that a class action is superior method of

4    adjudication where "[a]ll of the prospective class claims revolve around a question of law common

5    to all prospective members").

6         **D.      The Class Period**

7         As a fallback position, Fastaff argues that any class certified should end on May 17, 2017,

8    to reflect the date that it changed its housing benefit policy to base any reductions on days worked

9    rather than hours. Oppo. at 23-24.  It contends that its policy change eliminates any possibility of

10   liability because courts have held that a housing per diem does not need to be included in the

11   regular rate if reductions to it are made using a day as a measuring unit.  *See, e.g.*, *Newman v.*

12   *Advanced Technology Innovation Corp.*, 749 F.3d at 33, 37-38 (1st Cir. 2014).

13        In *Newman*, the First Circuit reversed a district court's grant of summary judgment in

14   defendant's favor for a FLSA claim and remanded for the court to enter partial summary judgment

15   in plaintiffs' favor as to liability.  *Id.* at 39.  In doing so, the court found that because the defendant

16   based reductions to a per diem on the number of hours worked during a week, the per diems

17   should be included in the regular rate used to calculate overtime.  *Id.* at 38.   The court noted that if

18   the defendant's formula for reducing per diems had been based on the number of days worked

19   rather than the hours worked, perhaps the formula would have been permissible under FLSA.  *Id.*

20   at 37-38.

21        Though *Newman* recognizes that using days as a measuring unit for the reduction of a

22   housing per diem may be permissible under FLSA, it does not find this method per se acceptable.

23   749 F.3d at 38-39.  Rather, it addressed the specific formula used by the defendants and how the

24   defendants could have proven that the value of the per diem could permissibly been excluded from

25   the regular rate.  *Id.* Falstaff may have a good argument, based on *Newman*, at summary judgment.

26   We are not there yet.  Limiting the class period in accordance with Fastaff's argument is an

27   unnecessary if not impermissible consideration of a common merits question at the class

28   certification phase.  *See Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1113-14

19

1 | (9th Cir. 2014) ("the district court erred in denying class certification because of its legal error of
2 | evaluating merits questions").

3 | ## CONCLUSION

4 | For the reasons discussed above, I DENY Fastaff's motion to stay and GRANT Dalchau's
5 | motion for class certification concerning its California state law claims. The following class is
6 | certified: "All individuals, except for those who worked exclusively on or after November 16,
7 | 2017 and received in-kind housing, who, at any time from March 25, 2013 through the date of
8 | certification, worked in California pursuant to an Assignment Agreement Letter with Fastaff
9 | during which they received a housing stipend or in-kind housing, received overtime pay, and had
10 | the value of the housing benefit excluded from their regular rate for purposes of calculating
11 | overtime pay."

12 | A Case Management Conference is scheduled for May 22, 2018, at 2:00 p.m. to discuss the
13 | impact, if any, of the ruling by the Stanislaus County Superior Court on this matter and to set a
14 | schedule for the rest of the case.  The parties shall file a Joint Case Management Statement by
15 | May 15, 2018, which (among other things) proposes a pre-trial and trial schedule.

16 | **IT IS SO ORDERED.**

17 | Dated: April 9, 2018

20 | William H. Orrick
   | United States District Judge

United States District Court
Northern District of California

20